CITY OF LINCOLN, NEBRASKA, A MUNICIPAL CORPORATION, APPELLANT, V. NEBRASKA LIQUOR CONTROL COMMISSION ET AL., APPELLEES.

147 N. W. 2d 803

Filed January 13, 1967. No. 36368.

Ralph D. Nelson, Vincent D. Brown, Arlyss E. Brown, and Jerry C. Nelson, for appellant.

Clarence A. H. Meyer, Attorney General, Robert R. Camp, Barney, Carter & Buchholz, and Frederick H. Wagener, for appellees.

Stewart, Calkins & Duxbury and David L. Crawford, for amicus curiae.

Heard before WHITE, C. J., SPENCER, BOSLAUGH, BROWER, SMITH, and McCOWN, JJ., and POLLOCK, District Judge.

BROWER, J.

The appellees Henry Grenemeier and Mollie Grenemeier, doing business as Grenemeier's Liquor Store, filed an application before the appellee Nebraska Liquor Control Commission, hereinafter called the commission, for a package liquor store license to be located in the Meadowlane Shopping Center at 836 North Seventieth Street in Lincoln, Nebraska, and Grenemeier's Inc. filed an application with the commission for a retail license for a beer off sale establishment in the same center at 832 North Seventieth Street in said city. Both applications were as prescribed by section 53-131, R. R. S. 1943, and there is no contention that the applications were insufficient in form, nor the applicants unqualified to be licensed. The commission notified the City of Lincoln,

referred to hereafter as the City, for its recommendations. The City recommended both applications be denied. A hearing was had before the commission at which the two applications were consolidated for trial by consent of the parties. Thereafter the commission granted both applications, conditioned as therein provided that petitioners surrender licenses held by each of them at other locations in the city unless they shall have meantime expired.

From an order overruling its motion for a rehearing, the City appealed to the district court for Lancaster County. After a trial the district court found in favor of the commission and both applicants and affirmed the commission's order in all respects. The City has appealed to this court from an order denying a new trial.

The applicants will be designated as such where the opinion refers to them both and named where it is necessary to separately consider them.

The questions raised by the assignments of error necessary to this decision will be stated as they are discussed.

The City, in its brief, seems to contend that it has the power to regulate the location of all those holding the several kinds of liquor licenses although the error it assigns to the trial court's ruling in this respect is obscure. It contends this may be done under the police power of the city and that such regulations are valid if reasonable and not discriminatory or arbitrary. The case of Safeway Stores, Inc. v. Nebraska Liquor Control Commission, 179 Neb. 817, 140 N. W. 2d 668, is cited where this court held that the Legislature has plenary powers over the control and regulation of the manufacture, distribution, sale, and dispensing of alcoholic liquors. In that case, the Legislature itself was exercising the police power. It does not determine the issue before us. The City calls attention to a great many cases decided by this court upholding different restrictions placed on retail liquor establishments by municipalities prior to the enactment of the statute on liquor, Chapter 53, R. R. S. 1943. We

think those decisions arose under previous statutes by which the power to regulate such establishments was placed in the municipalities involved and have little application here. We need not consider them. At present the statute provides: "The power to regulate all phases of the control of the manufacture, distribution, sale, and traffic in alcoholic liquors, except as specifically delegated in this act (Chapter 53), is hereby vested exclusively in the commission." § 53-116, R. R. S. 1943. The City calls attention to our recent decision in Allen v. Nebraska Liquor Control Commission, 179 Neb. 767, 140 N. W. 2d 413, claiming this court there held the city has general power to limit the number of liquor licenses issued in a city unless its action was arbitrary and unreasonable. A careful examination of that case does not warrant the interpretation placed on it by the City. In Allen, the city had limited by resolution the number of package liquor stores to 31 and because thereof had recommended the denial of the application to the commission. The commission concurred in the city's recommendation and denied the license. It was claimed the resolution limiting the number of licenses was not properly adopted and was arbitrary, and hence the commission should not have admitted it in evidence or considered it. The question of the admissibility of the city's resolution in evidence was there involved and presented on appeal to the district court and thereafter to this court. The case, however, makes plain that the action of the city was advisory only and the power of decision was in the commission. The opinion states: "In 1959 the Legislature for the first time required applications for liquor licenses to be filed with the Nebraska Liquor Control Commission rather than with local authorities. The legislation requires that notice be given to local authorities and that such authorities will have 30 days to make their recommendation. The City of Lincoln through its city council, recommended a denial of the application in the instant case. It is the commission, however, that

determines whether or not the application shall be granted or denied, the recommendation of local authorities under the act being advisory only. * * * In this case the question is whether or not the commission acted arbitrarily and unreasonably in denying the application on the recommendation of the city council of Lincoln. This in turn relates itself to the power of the city council of Lincoln to *recommend a denial* based on its action in limiting the number of package liquor licenses to 31." (Italics supplied.) This contention of the City has no merit.

The City maintains that in any event the Legislature has authorized it to regulate the business of all beer licensees. It calls attention to the fact that the applicant Grenemeier's Inc. was applying for an off sale beer license. The City cites section 53-147, R. R. S. 1943, which reads: "The governing bodies of cities and villages are hereby authorized to regulate by ordinance, not inconsistent with the provisions of this act, the business of all beer licenses carried on within their corporate limits." It claims the power so conferred extends to the regulation of the location, type of building, and number of licenses. It cites the case of Phelps Inc. v. City of Hastings, 152 Neb. 651, 42 N. W. 2d 300, where this court reversed the judgment of the district court in enjoining the enforcement of an ordinance of the city of Hastings which made it unlawful for any person or persons holding a license or licenses for the sale at retail of beer "on sale" and of alcoholic liquors other than beer in the original package, to sell, or keep for sale the same at retail, except in separate and distinct rooms or premises so separated by walls or partitions that access cannot be had directly from one to the other by means of doors or other openings. It was held the ordinance was proper under said section 53-147, R. R. S. 1943. It is unnecessary for us to determine whether or not the power of the City to regulate the businesses of beer licensees includes the power to regulate the location of the place of business

nor the extent of the power of the City in that respect. Section 53-147, R. R. S. 1943, not only contains a grant of power to cities and villages to regulate the business of beer licensees, but prescribes that the exercise of the authority granted be by ordinance, and the designated manner of the execution of the power is exclusive. Here there is no evidence that the City had enacted any ordinance containing regulations applicable to the question before us and no suggestion is made by the City that such an ordinance exists. The City's contention has no merit.

The City maintains the trial court erred in considering the applications as new ones purportedly prepared and filed as provided in section 53-131, R. R. S. 1943. The City calls attention to the record here which includes evidence that both applicants had previously sought transfer of the location of their respective businesses pursuant to section 53-129, R. R. S. 1943, which reads as follows: "Retail licenses issued hereunder apply only to the premises described in the application and in the license issued thereon, and only one location shall be so described in each license. After such license has been granted for particular premises, the commission, with the approval of the local governing body, and upon proper showing, may endorse upon the license permission to abandon the premises therein described and remove therefrom to other premises approved by him or it, but in order to obtain such approval the retail licensee shall file with the local governing body a request in writing, and a statement under oath which shall show that the premises to which removal is to be made comply in all respects with the requirements of this act. No such removal shall be made by any such licensee until his said license has been endorsed to that effect in writing both by the local governing body and by the commission."

The City contends that the trial court and this court should "pierce the form" of the action and prevent the applicants from accomplishing by indirection what they

failed to do directly under section 53-129, R. R. S. 1943. The City claims under this section the approval of the City is an absolute essential to change location by a licensee and the courts should not allow the section to be circumvented. The City has purported to fix the maximum number of liquor establishments at 58 although it is not shown whether the maximum number presently exist. The position of the City is not exactly clear. If it maintains no present licensee can change the location of its business without the City's consent because section 53-131, R. R. S. 1943, by its terms refers to those seeking "new licenses," it would appear to be seeking ironclad control over the locations of all present licensees. If it contends that the present applicants only are barred from seeking new licenses because of their previous application under secton 53-129, R. R. S. 1943, it seeks such control over them alone. The applicants have been in their present businesses for several years and the City makes no complaint as to the character of the licensees or the conduct of their business in the past. It seems natural that successful operators would first attempt to secure a change of location under section 53-129, R. R. S. 1943, without the expense attending an extended application, notice, and hearing required under section 53-131, R. R. S. 1943. The interpretation desired by the City would result in these applicants alone of all persons being precluded from making new applications with respect to relocating their place of business because of an attempt to do so in accordance with the express provisions of statute. An examination of the provisions of the liquor law, Chapter 53, R. R. S. 1943, shows the general intent of the Legislature was to grant the power to make decisions to the commission except as specifically otherwise authorized. Section 53-129, R. R. S. 1943, itself provides that the commission with the approval of the local governing body on proper showing may endorse permission to the licensee to abandon the old and remove to the new location. Although the City's consent is

necessary under that section the commission is to act if the consent is given. Under section 53-129, R. R. S. 1943, there is no requirement of notice or hearing. Only a showing that the new premises meet the requirements of the act is necessary. Section 53-1,115, R. S. Supp., 1965, provides for an appeal to the commission from any order or action of the local governing body of a city revoking or refusing to revoke a license. Section 53-1,116, subsection (5), R. R. S. 1943, provides that any decision of the commission granting or refusing to revoke a license or permit for the sale of alcoholic liquors including beer may on appeal be reversed, vacated, or modified by the district court for Lancaster County. In neither instance is an appeal provided from an order granting or refusing a transfer of location as provided in section 53-129, R. R. S. 1943. Where no notice or hearing is required the general appeal provision, sections 84-913 to 84-917, R. R. S. 1943, would also appear inapplicable. Without a hearing an error proceeding would seem unavailing. The statute in all other cases provides for an appeal. The applicants and the commission as appellees urge the proper interpretation of the purpose of section 53-129, R. R. S. 1943, is to furnish a short procedure for a change of location in the business of a liquor licensee when neither the commission nor the municipality objects thereto and the section does not preclude an application for a new license at another location. The lack of a provision for notice or hearing in section 53-129, R. R. S. 1943, the absence of a provision for an appeal which is provided in all other cases, and the apparent general purpose of the liquor statute to give the commission discretion in all other cases compel us to the same conclusion. The contention of the City is without merit.

The City maintains the trial court erred in affirming the commission's order in granting the applicants' licenses at locations in the Meadowlane Shopping Center over the City's objections and contends the commission's

order was arbitrary and capricious. The policy resolution of the City limits the number of beer licenses to 58 of which only 40 could be licensed for consumption on the premises. It permits 31 package liquor outlets. It describes each area in which the different types of liquor establishments might be licensed. The resolution itself does not, however, purport to set forth the underlying policy of the city nor the basis or reasons for the restriction of locations set forth. It was unrelated to present zoning.

Members of a committee of the council which had the liquor policy of the city under consideration before certain changes were adopted in the policy resolution testified as to the reasons underlying the liquor policy as the witnesses understood them. There was testimony that the original policy adopted in 1954 had permitted liquor outlets only in areas covered by the police foot patrol. The witnesses said the committee felt the policy should be updated. It considered the effect on residential properties as well as differences in policing certain areas as to holdups and as to sales to minors. The members concluded that liquor outlets should not be permitted in all areas where business was permitted, but should be restricted to the main commercial center referred to as the "regional area" and other much smaller areas referred to as "major commercial centers." The "major commercial centers" were suggested by certain data in the office of the planning department. The data referred to the future development more than present conditions. These centers were shown on exhibit 21 as prepared by the planning department. That department had projected to the year 1980 the growth of these "major commercial centers" and estimated at that future time each would draw trade from an area within 2 miles of the center. This was estimated from traffic computers presently placed at certain intersections. There were six of such "major commercial centers" and in four liquor outlets were allowed but not in the other two.

The two areas were excepted because of the proximity to student bodies attending a college and a university. These young people, it was said, would create a problem of enforcement although the members had never investigated whether this had occurred in the "regional area" close to the University of Nebraska. At times, licenses had been granted by the council without regard to the existing policy resolution which was amended thereafter. Councilmen had always felt free to vote to issue licenses in other areas prior to changing the policy resolution. Other licenses existed outside of the prescribed areas. When areas were annexed containing outlets they were allowed to continue as long as they remained under the same ownership although the policy resolution remained unchanged.

The Meadowlane Shopping Center to which the applicants desired to move their location was not one of these "major commercial centers." It however was compared to the Indian Hills Shopping Center designated on exhibit 21 as such a center. The witnesses testified the two shopping centers were quite similar except there was more room for future development because of vacant land to the west and south of the Indian Hills Center and it was thought it would expand to be such by 1980. The Meadowlane area was policed by cruiser cars and motorcycles in the same manner as many other commercial areas. It seems to have served the customers from as large a residential area as Indian Hills Center.

The Nebraska Liquor Control Commission had a broad discretion in determining whether or not application for licenses for the sale of liquor will be granted or denied, and the courts are without authority to interfere unless there is an abuse of that discretion. Allen v. Nebraska Liquor Control Commission, 179 Neb. 767, 140 N. W. 2d 413. Considering the evidence hitherto reviewed, we cannot say that the commission abused its discretion in finding that the liquor applications of the appellants should be granted and that their location in

the Meadowlane Shopping Center was presently justified.

It follows that the judgment of the district court affirming the action of the Nebraska Liquor Control Commission should be and is affirmed.

AFFIRMED.