CENTRAL PARK PHARMACY, INC., ET AL., APPELLANTS,
v. NEBRASKA LIQUOR CONTROL COMMISSION, APPELLEE,
AMERICAN COMMUNITY STORES, DOING BUSINESS AS
HINKY DINKY, INTERVENOR-APPELLEE.

344 N.W.2d 918

Filed March 2, 1984.   No. 83-216.

Tim J. Kielty of Gast & Kielty, for appellants.

Paul L. Douglas, Attorney General, and Terry R. Schaaf, for appellee.

Soren S. Jensen and Thomas J. Culhane of Erickson, Sederstrom, Leigh, Eisenstatt, Johnson, Kinnamon, Koukol & Fortune, P.C., for intervenor-appellee.

KRIVOSHA, C.J., HASTINGS, CAPORALE, and SHANAHAN, JJ., and BRODKEY, J., Retired.

CAPORALE, J.

Appellants filed a petition in the district court, which appears both to undertake an appeal to that court of a Nebraska Liquor Control Commission ruling and, at the same time, to seek original declaratory and injunctive relief. The district court determined the commission's ruling to be proper and dis-

missed the appeal. Without in any way approving the procedure employed in this case, for the reasons hereinafter discussed we affirm.

The stipulated facts establish that American Community Stores sought to transfer one of its liquor licenses from one location to another in the city of Omaha under the provisions of Neb. Rev. Stat. § 53-129 (Cum. Supp. 1982). Since August 1, 1980, that statute has provided in part: "After such license has been granted for particular premises, the commission, with the approval of the local governing body, and upon proper showing, may endorse upon the license permission to abandon the premises therein described and remove therefrom to other premises approved by him, her, or it, but in order to obtain such approval the retail licensee shall file with the local governing body a request in writing, and a statement under oath which shall show that the premises to which removal is to be made comply in all respects with the requirements of this act. No such removal shall be made by any such licensee until his or her said license has been endorsed to that effect in writing both by the local governing body and by the commission."

American Community Stores owns interests in more than the two liquor licenses it would now be permitted but for the fact that it owned such interests prior to March 4, 1963. See Neb. Rev. Stat. § 53-124.02 (Reissue 1978).

Central Park Pharmacy, Inc., shares a common wall with American Community Stores at the new location to which the latter sought to transfer one of its "grandfathered" off-sale beer licenses. Central Park Pharmacy, Inc., also owns an interest in a liquor license which permits it to, among other things, dispense off-sale beer. Central Park Pharmacy, Inc., and others, collectively hereinafter called Central Park, were opposed to permitting the transfer. Central Park made its opposition known to the commission and, additionally, petitioned the

commission to issue a ruling which, among other things, would declare that the commission lacked authority to permit the transfer of a grandfathered license.

Before making any ruling with respect to Central Park's petition, the commission approved American Community Stores' request to transfer its license. Central Park then filed this action in the district court.

Neb. Rev. Stat. § 84-917(1) (Reissue 1981) provides that "[a]ny person aggrieved by a final decision in a *contested case*, whether such decision is affirmative or negative in form, is entitled to judicial review under sections 84-917 to 84-919. Nothing in this section shall be deemed to prevent resort to other means of review, redress, or relief provided by law." (Emphasis supplied.)

A "contested case" is defined in Neb. Rev. Stat. § 84-901(3) (Reissue 1981) as a "proceeding before an agency in which the legal rights, duties, or privileges of specific parties are required by law or constitutional right to be determined after an agency hearing." We have held that a proceeding becomes a contested case when a hearing is required. *J K & J, Inc. v. Nebraska Liquor Control Commission*, 194 Neb. 413, 231 N.W.2d 694 (1975); *City of Lincoln v. Nebraska Liquor Control Commission*, 181 Neb. 277, 147 N.W.2d 803 (1967).

As noted earlier, unlike the procedure specified by Neb. Rev. Stat. § 53-133 (Cum. Supp. 1982) with respect to applications for first issue licenses, § 53-129 makes no provisions for members of the general public to become protestants when the request is merely to transfer the location of an existing license. Stated another way, the statutory scheme does not contemplate that the commission make the determination in a contested case of whether an existing license is to be transferred. In its appearance before the commission to object to the transfer, Central Park was a mere interloper.

Since the determination allowing American Community Stores to transfer its license was not made in a contested case, Central Park was not aggrieved by a final decision made in a contested case, and therefore had no standing to appeal from that action.

The statute providing for declaratory rulings such as the one sought by Central Park is Neb. Rev. Stat. § 84-912 (Reissue 1981), which provides: "On petition of any interested person, any agency may issue a declaratory ruling with respect to the applicability to any person, property, or state of facts of any rule or statute enforceable by it. A declaratory ruling, if issued after argument and stated to be binding, is binding between the agency and the petitioner on the state of facts alleged unless it is altered or set aside by a court. Such a ruling is subject to review in the manner provided in sections 84-917 to 84-919, for the review of decisions in contested cases. Each agency shall prescribe by rule the form for such petitions and the procedure for their submission, consideration, and disposition."

We recognize that § 84-912 provides that a declaratory ruling is subject to review in the same manner in which decisions in contested cases are reviewed. The difficulty from Central Park's point of view in that connection, however, is that this is not an appeal from a declaratory ruling.

The district court was therefore correct in dismissing Central Park's appeal of the commission's ruling to that court.

We now turn our attention to Central Park's request for an original declaration of rights by the district court.

The operative assignment of error in that connection, in effect, is that the district court erred in its interpretation of applicable law. We disagree; the district court was entirely correct.

Central Park's central contention is that the transfer of a license from one location to another in actuality involves the replacement of an existing li-

cense with a new license. Since American Community Stores has in excess of two licenses, it is not entitled, so Central Park argues, to a new license. This contention was addressed in *City of Lincoln v. Nebraska Liquor Control Comm.*, 208 Neb. 630, 304 N.W.2d 922 (1981), and rejected. In that case the city argued that the issuance of a new license and the removal procedure of § 53-129 (Reissue 1978) were effectively equivalent. We met that contention by stating therein at 632, 304 N.W.2d at 924: "The meaning and purpose of § 53-129 becomes clear when we recognize that under the laws of the State of Nebraska a liquor license is issued to a named licensee for a named location. It may not be used by any entity other than that to whom it has been issued, nor may the license be used in any other premises except that which is specifically noted in the license. If, then, a named licensee desires to relocate the license, it may do so under the provisions of § 53-129 by making application to either the commission or the local governing body and, when approved by the local governing body, may move to the new location. In this respect, the relocation of a license from its issued premises to new premises is dependent upon approval by the local governing body. If the local governing body disapproves, then the license may not be relocated." And at 634, 304 N.W.2d at 925: "The City and Jax urge us, in effect, to read the statute as though a new licensee may be created under the provisions of § 53-129 by a transfer. The statute, however, is clear and unambiguous and not open to interpretation."

In *City of Lincoln v. Nebraska Liquor Control Commission*, 181 Neb. 277, 147 N.W.2d 803 (1967), we declared that § 53-129 provided a short procedure for a change of location in the business of a liquor licensee when neither the commission nor the municipality involved objects thereto.

It is clear from the above two cases that this jurisdiction is committed to the view that the relocation

of an existing liquor license is not the issuance of a new one.

Central Park directs our attention to *Hewitt et al v. Gage*, 257 Ark. 579, 519 S.W.2d 749 (1975), which, it argues, takes a contrary view. The short answer to that argument, we suppose, is that the law of Arkansas need not be the law of Nebraska. Moreover, a reading of the Arkansas statute, Ark. Stat. Ann. § 48-310.2 (Supp. 1973), reveals that it specifically provided that neither a new nor "replacement" permit was to be issued to any person who had an interest in another permit. The Arkansas Supreme Court, dealing with that specific statutory language, held that the relocation of an existing permit violated the prohibition contained in the statute. Nebraska has no statute which equates relocation of an existing license with the issuance of a new one. Indeed, as noted earlier, quite the contrary is true; the Nebraska statutes treat the two situations differently.

Central Park also seems to believe that *Safeway Stores, Inc. v. Nebraska Liquor Control Commission*, 179 Neb. 817, 140 N.W.2d 668 (1966), lends support to its position. In fact, that case does not address the issue at all. Therein, Safeway, which already held 10 licenses, applied for a new license to sell beer. When that new license was denied on the ground that Safeway already held more than two licenses and thus was not entitled to more, Safeway attacked the constitutionality of Neb. Rev. Stat. §§ 53-124.02 et seq. (Cum. Supp. 1963). This court held that the Legislature has plenary power to regulate the dispensing of liquor, and although certain statutory enactments then in question were unconstitutional, certain other portions were not.

Neb. Rev. Stat. § 53-124.05 (Reissue 1978) provides: "Nothing in sections 53-124.02 to 53-124.07 shall affect the right of any holder of retail licenses prior to March 4, 1963 to continue to hold, use, and renew such licenses."

Central Park contends that since the statute does not include the term "transfer" in describing the rights of a license holder prior to March 4, 1963, it does not permit those holding in excess of two licenses to relocate a grandfathered license. It further contends that those granted grandfather rights should be limited in the exercise of existing uses, citing *County of Saunders v. Moore*, 182 Neb. 377, 155 N.W.2d 317 (1967). That case involved a zoning restriction and the extent to which a nonconforming use existing prior to the enactment of the zoning restriction would be permitted. The applicability of that case to the present inquiry, which concerns a question of statutory interpretation, is not apparent.

As has often been said, no interpretation is needed to ascertain the meaning of plain and unambiguous statutes; in the absence of anything to indicate the contrary, words used in a statute will be given their ordinary meaning. *Spilinek v. Spilinek*, 215 Neb. 35, 337 N.W.2d 122 (1983). There is nothing in § 53-124.05 which limits the "use" of a grandfathered license to the location for which it was first granted. The plain, ordinary meaning of the unqualified word "use" means that one may avail himself of all the rights incident to its existence; that includes relocating it under the appropriate statutory procedure.

Even if we assume for the purposes of argument that § 53-124.05 were somehow ambiguous, thereby requiring us to discern the Legislature's intent in adopting it, *North Star Lodge #227 v. City of Lincoln*, 212 Neb. 236, 322 N.W.2d 419 (1982), the legislative history does not support Central Park's position.

The Miscellaneous Subjects Committee hearing, 73d Leg. 3 (Jan. 30, 1963), attributed to Senator Jerome Warner, the principal introducer of L.B. 105, 1963 Neb. Laws, ch. 308, § 4, p. 910, the following statement: "[I]t [the bill] would restrict to two the number of alcoholic beverage retail licenses that any person could have a beneficial interest in. Some chain operations use alcoholic beverages as a loss

leader which encourages the public to overbuy this item.

"This bill contains the grandfather clause to protect those that now have a beneficial interest in more than two alcoholic beverage retail licenses.

"The passage of this bill would help to foster and promote temperance in the consumption of alcoholic liquors as set forth in the Nebraska Liquor Control Act.

"Briefly, it has two designs; one, to *prevent* concentration of liquor control and to keep the small private operator from financial competition that is too great from the bigger businesses." (Emphasis supplied.)

Neither of the purposes indicated an intent to reduce the concentration of control already present. In fact, just the opposite can be inferred from § 53-124.05. First of all, the concentration addressed was the identity of those who acquired licenses, not the location of licensed premises. In any event, the Legislature was willing to accept whatever amount of license concentration already existed.

Central Park further contends that the term "right," as used in § 53-124.05, refers to those rights enumerated in Neb. Rev. Stat. § 53-123.04 (Reissue 1978), which do not include the right to remove a license. This is clearly erroneous. Section 53-123.04 refers to the rights enjoyed by a holder of a license, which include the right to sell alcohol on the premises specified in the license. The word "right" in § 53-124.05 refers to the right to sell as well as to hold and renew.

The trial court's judgment is affirmed.

AFFIRMED.