JOSEPH AND ANTOINETTE WASIKOWSKI ET AL., APPELLEES AND CROSS-APPELLANTS, V. THE NEBRASKA QUALITY JOBS BOARD, A NEBRASKA ADMINISTRATIVE AGENCY, ET AL., APPELLEES AND CROSS-APPELLANTS, AND NEBRASKA BEEF, INC., A NEBRASKA CORPORATION, AND NEBRASKA BEEF LTD., A NEBRASKA LIMITED PARTNERSHIP, APPELLANTS AND CROSS-APPELLEES.

648 N.W.2d 756

Filed July 26, 2002.   No. S-00-573.

William M. Lamson, Jr., and Robert A. Mooney, of Lamson, Dugan & Murray, L.L.P., for appellants.

Patricia A. Knapp, and D. Milo Mumgaard, of Nebraska Appleseed Center for Law in the Public Interest, for appellees Joseph and Antoinette Wasikowski et al.

Don Stenberg, Attorney General, and L. Jay Bartel for appellees Nebraska Quality Jobs Board et al.

Kermit A. Brashear and Mary P. Galligan for amici curiae Greater Omaha Chamber of Commerce and Nebraska Chamber of Commerce and Industry.

Amy A. Miller for amicus curiae American Civil Liberties Union Foundation of Nebraska.

Vincent M. Powers, of Vincent M. Powers & Associates, for amicus curiae Common Cause Nebraska.

HENDRY, C.J., WRIGHT, CONNOLLY, GERRARD, STEPHAN, McCORMACK, and MILLER-LERMAN, JJ.

GERRARD, J.

The Nebraska Quality Jobs Board (the Board); Board members E. Benjamin Nelson, David Heineman, and Dennis Jorgensen; the Nebraska Department of Revenue and the State Tax Commissioner, M. Berri Balka (collectively the State defendants); and Nebraska Beef, Inc., and Nebraska Beef, Ltd., appeal from the district court's order (1) voiding the Board's approval of Nebraska Beef, Ltd.'s application for wage benefit tax credits under the Quality Jobs Act and (2) ordering that Nebraska Beef, Ltd., return all credits to the State because the Department of Revenue failed to promulgate regulations as required under the Quality Jobs Act. The resident taxpayer plaintiffs cross-appeal the district court's determination that the plaintiffs waived all rights to contest the Board's alleged violation of the public meetings laws.

## I. FACTUAL BACKGROUND

The Nebraska Legislature enacted the Quality Jobs Act (the Act), Neb. Rev. Stat. § 77-4901 et seq. (Reissue 1996, Cum. Supp. 2000 & Supp. 2001), to encourage new and existing businesses to

relocate to and expand in Nebraska, and to provide appropriate inducements to encourage them to do so if it aided in the economic and population growth of the state and created better jobs for state citizens. § 77-4902. The Act provides that companies may apply for a wage benefit credit; upon the Board's approval of such application, the company enters into a written project agreement with the State. § 77-4928(4) and (7).

Nebraska Beef, Inc., is a Nebraska corporation with its principal place of business in Omaha, Nebraska. Nebraska Beef, Ltd., is a Nebraska limited partnership with its principal place of business in Omaha, and is owned by Nebraska Beef, Inc. Although not originally named as a defendant, the parties agreed at trial to add Nebraska Beef, Ltd., as a party defendant. The two entities are referred to hereafter as "Nebraska Beef."

On October 13, 1995, Nebraska Beef filed an application for wage benefit credits under the Act. As set forth in the Act, the Board determines whether to approve an application by majority vote, based on the Board's determination of whether the project will enable the State to accomplish the purposes of the Act. The Board is an administrative state government entity created pursuant to the Act; the members of the Board are the Governor, the State Treasurer, and the chairperson of the Nebraska Investment Council. § 77-4908. At all times relevant to this action, the Board members were Nelson, Governor; Heineman, State Treasurer; and Jorgensen, chairperson of the Nebraska Investment Council.

The Board met on August 14, 1996, to consider Nebraska Beef's application for wage benefit credits. The Board convened a closed session, after which it voted unanimously to request an Attorney General's opinion addressing certain questions regarding the Act. The Board stated that the closed session was necessary to "consider confidential information that should be maintained confidential so that obviously competitors don't learn more about [Nebraska Beef's] business than they are able to find out in the ordinary way." The Board took no other action on Nebraska Beef's application at the August 14 meeting.

Various Nebraska newspapers published notice of the Board's next scheduled meeting. On November 25, 1996, the Board met again to resume consideration of Nebraska Beef's application.

Plaintiff Antoinette Wasikowski appeared at the meeting and read a letter in opposition to the Board's granting Nebraska Beef's application. Wasikowski also submitted into the record two letters opposing Nebraska Beef's application. The Board reconvened in closed session "to consider confidential information as permitted by law" in reviewing Nebraska Beef's application, after an uncontested and unanimous vote to do so. Upon returning from closed session, a majority of the Board voted to approve Nebraska Beef's application. Based on the Board's approval of the application, the State and Nebraska Beef entered into a Quality Jobs Act project agreement, executed on June 2, 1998, by a general partner of Nebraska Beef, Ltd., and Balka, State Tax Commissioner.

## II. PROCEDURAL BACKGROUND

### 1. RULES AND REGULATIONS PETITION—CASE No. 558-163

On July 15, 1997, resident Nebraska taxpayers Joseph and Antoinette Wasikowski, Janet Bonet, Wayne Weston, Fay Maloley, and Rodney Krogh (collectively the plaintiffs) filed a petition in the Lancaster County District Court contesting the Board's decision to approve Nebraska Beef's application. The case was assigned as docket 558, page 163 (case No. 558-163). The petition included as defendants the Board; Board members Nelson, Heineman, and Jorgensen; the Nebraska Department of Revenue; Balka, State Tax Commissioner; and Nebraska Beef, Inc.

After the district court sustained demurrers to the plaintiffs' first petition, the plaintiffs filed an amended petition. The first cause of action, brought pursuant to the Administrative Procedure Act (APA), Neb. Rev. Stat. §§ 84-901 to 84-920 (Reissue 1994 & Cum. Supp. 1998), alleged that the Department of Revenue failed to promulgate rules and regulations as required by the Quality Jobs Act. As relief, the plaintiffs requested a declaration that the department had a mandatory obligation to implement rules and regulations and that because the department failed to do so, the Board's approval of Nebraska Beef's application was null and void. Further, the plaintiffs requested an injunction enjoining the Board from approving wage benefit tax credit applications until the department implemented rules and regulations.

Under the second cause of action, the plaintiffs alleged that pursuant to the Uniform Declaratory Judgments Act, Neb. Rev. Stat. §§ 25-21,149 to 25-21,164 (Reissue 1995), the Board acted without statutory authority, without factual foundation in the record, and without proper rules and regulations in place, violating the Due Process Clauses of the Nebraska and U.S. Constitutions. On the second cause of action, the plaintiffs requested a declaratory judgment voiding the Board's approval of Nebraska Beef's application, and an injunction enjoining Balka, his successors in interest, or anyone acting on his behalf, from executing an agreement between Nebraska Beef and the State of Nebraska.

### 2. PUBLIC MEETINGS LAWS PETITION—CASE NO. 562-086

On October 10, 1997, the plaintiffs filed another petition against the Board in the Lancaster County District Court, assigned as docket 562, page 86 (case No. 562-086). The petition named as defendants Board members Nelson, Heineman, and Jorgensen, and Nebraska Beef. The petition alleged that the Board acted in violation of public meetings laws by conducting closed sessions at its meetings. The plaintiffs requested that the district court void any action taken by the Board, including its November 25, 1996, decision to approve Nebraska Beef's application.

### 3. DISTRICT COURT CONSOLIDATED ORDER

Based upon a stipulation by the parties, the district court consolidated cases Nos. 558-163 and 562-086. Trial took place in January 2000, and the district court entered its orders on May 1, 2000. After considering motions for a new trial filed by the State defendants and Nebraska Beef, the district court amended its May 1 order in each case. In its amended orders, the district court first determined that it had jurisdiction to hear the case because the Board's decision was a "contested case" within the meaning of the APA, § 84-917.

Next, the district court considered the plaintiffs' public meetings laws claims. The district court concluded that the August 14, 1996, closed session was not in substantial violation of the public meetings laws because the reasons given for closed session "seem[ed] valid" and the Board did not take any final action.

Additionally, although the district court intimated that the closed session at the November 25, 1996, meeting might have been improper, it determined that Antoinette Wasikowski (hereafter Wasikowski) waived any claim on this ground because she attended the meeting but did not object to a closed session. Thus, the district court concluded that the plaintiffs' complaint under the public meetings laws failed.

The district court next considered the plaintiffs' cause of action stated pursuant to the Uniform Declaratory Judgments Act. Sovereign immunity defeated claims against the Board and the Department of Revenue; thus, the district court analyzed this cause of action with regard to the individual defendants only. The district court determined that the allegation that the Board acted without statutory authority in approving Nebraska Beef's application failed because although Nebraska Beef was "already operating" in Nebraska when it received the tax credits, this fact was not dispositive; the district court found that the Board takes other factors into account under § 77-4928(4) in reviewing a wage benefit credit application.

The district court lastly considered the plaintiffs' cause of action pursuant to the APA and concluded that the Board's approval of the application was invalid as a violation of the plaintiffs' due process rights because (1) the Department of Revenue had not promulgated rules or regulations prior to the Board's approval of the application and (2) § 77-4932 mandates such rules and regulations. The district court rejected the defendants' equitable estoppel, laches, and waiver defenses. In conclusion, the district court declared the wage benefit credits given to Nebraska Beef void and ordered Nebraska Beef to return the wage benefit credits to the State.

The State defendants and Nebraska Beef appeal to this court; the plaintiffs cross-appeal. Pursuant to Neb. Ct. R. of Prac. 2B (rev. 2000), we granted Nebraska Beef and the State defendants' petition to bypass the Nebraska Court of Appeals.

### III. ASSIGNMENTS OF ERROR

Nebraska Beef assigns that the district court erred in (1) reversing the decision of the Board granting wage benefits to Nebraska Beef because (a) the decision of the Board was not a

"contested case" within the meaning of the APA and (b) the case did not involve an "agency" subject to the act, the court did not have jurisdiction under § 84-917, and the plaintiffs waived any right to contest the absence of regulations by failing to raise the issue at the Board's meeting; (2) determining that the Board's lack of regulations resulted in a violation of the plaintiffs' due process rights; and (3) expanding the scope of its authority under the APA by ordering that Nebraska Beef repay credits received pursuant to a facially valid agreement, as well as granting relief not requested or mandated.

On cross-appeal, the State defendants incorporate and adopt Nebraska Beef's three assignments of error. Further, the State defendants assign that the district court erred (1) in finding that it had jurisdiction under § 84-917 of the APA to consider the plaintiffs' claim that the Board's approval of Nebraska Beef's application for wage benefit tax credits was void because the Department of Revenue had not adopted rules and regulations and (2) in finding that the absence of rules and regulations promulgated by the Department of Revenue prior to the Board's approval of Nebraska Beef's application violated the APA and that the department's failure to adopt rules and regulations required the court to void the Board's approval of Nebraska Beef's application.

On cross-appeal, the plaintiffs assign that the district court erred in (1) determining that Wasikowski waived her right to challenge closed sessions by the Board by attending the meeting on November 25, 1996, and failing to object; (2) determining that Wasikowski, by failing to object at the Board's meeting on November 25, waived the rights of the other plaintiffs to challenge closed sessions by the Board; (3) ruling that the Board had not committed a substantial violation of the public meetings laws by holding a closed session on August 14, 1996, to discuss the merits of granting wage benefit tax credits to Nebraska Beef; and (4) failing to void the Board's decision to grant Nebraska Beef wage benefit tax credits after finding that the Board substantially violated the public meetings laws by holding a closed session on November 25 to discuss the merits of granting those tax credits.

## IV. STANDARD OF REVIEW

Before reaching the legal issues presented for review, it is the duty of an appellate court to determine whether it has jurisdiction over the matter before it. *Kansas Bankers Surety Co. v. Halford*, 263 Neb. 971, 644 N.W.2d 865 (2002).

On a question of law, an appellate court is obligated to reach a conclusion independent of the determination reached by the court below. *Manker v. Manker*, 263 Neb. 944, 644 N.W.2d 522 (2002).

Actions for relief under the public meetings laws are tried as equitable cases, given that the relief sought is in the nature of a declaration that action taken in violation of the laws is void or voidable. Thus, the approach taken is that such cases are tried and reviewed by the appellate courts as equity cases. *Hansmeyer v. Nebraska Pub. Power Dist.*, 6 Neb. App. 889, 578 N.W.2d 476 (1998), *aff'd* 256 Neb. 1, 588 N.W.2d 589 (1999). In an appeal of an equitable action, an appellate court tries factual questions de novo on the record, provided that where credible evidence is in conflict on a material issue of fact, the appellate court considers and may give weight to the fact that the trial judge heard and observed the witnesses and accepted one version of the facts rather than another. *Caruso v. Parkos*, 262 Neb. 961, 637 N.W.2d 351 (2002); *Hansmeyer, supra.*

## V. ANALYSIS

This appeal requires consideration on two distinct grounds: (1) the consequences of the Department of Revenue's failure to promulgate rules and regulations for the Board prior to the Board's approval of Nebraska Beef's application for wage benefit tax credits and (2) the Board's alleged violations of the public meetings laws, which occurred when the Board convened closed sessions to consider Nebraska Beef's application.

### 1. DEPARTMENT OF REVENUE'S FAILURE TO PROMULGATE RULES AND REGULATIONS PRIOR TO BOARD'S APPROVAL OF NEBRASKA BEEF'S APPLICATION

#### (a) Jurisdiction: "Contested Case" under APA

Nebraska Beef and the State defendants assign that the district court erred in finding that the plaintiffs' petition constituted

a "contested case" under the APA. The APA defines a "contested case" as a proceeding before an agency in which the legal rights, duties, or privileges of specific parties are required by law or constitutional right to be determined after an agency hearing. § 84-901(3). Section 84-917 outlines the process by which an aggrieved party can pursue an appeal of a final decision in a contested case.

The district court found the Board's decision to be a "contested case" within the definition of the APA. The district court relied on our statement in *Stoneman v. United Neb. Bank*, 254 Neb. 477, 577 N.W.2d 271 (1998), that a proceeding becomes a contested case when a hearing is required. See, also, *Central Park Pharm. v. Nebraska Liq. Cont. Comm.*, 216 Neb. 676, 344 N.W.2d 918 (1984). We determined in *Stoneman, supra*, that when an administrative body acts in a quasi-judicial manner, due process requires notice and an opportunity for a full and fair hearing at some stage of the agency proceedings. Further, *Stoneman* stated that the exercise of discretion to grant or deny a license, permit, or other type of action is a quasi-judicial function. *Id.* The district court compared the Board's proceedings to the Department of Banking and Finance's approval of a banking application in *Stoneman, supra*, and *First Fed. Sav. & Loan Assn. v. Department of Banking*, 187 Neb. 562, 192 N.W.2d 736 (1971), and a Liquor Control Commission decision to approve a liquor license. Thus, the district court concluded that the Board's decision was a contested case under the APA.

The Board, however, is not an agency subject to the APA. Section 84-901(1) defines an agency as a board, commission, department, officer, division, or other administrative office or unit of the state government authorized by law to make rules and regulations. The district court determined that because the Board was not specifically excluded from the APA under § 84-901(1), it is an entity covered by the APA and all provisions therein. This court has recognized, however, that the APA applies only to agencies authorized by law to make rules and regulations. See *Hoiengs v. County of Adams*, 245 Neb. 877, 516 N.W.2d 223 (1994). In *Hoiengs*, for example, this court determined that the Public Employees Retirement Board was not an agency subject

to the APA because the act creating the retirement board did not grant the authority to make rules and regulations. See *id.*

The Board does not have this rulemaking authority; the Act provides that the Department of Revenue, in consultation with the Governor and the Department of Economic Development, shall adopt and promulgate all rules and regulations to carry out the purposes of the Act. See § 77-4932. The Department of Revenue is clearly an agency subject to the APA. We conclude, however, that because the Board does not promulgate rules and regulations, and because Nebraska Beef's application submission to the Board does not involve a quasi-judicial "contested case" requiring review pursuant to § 84-917, the Board is not an agency subject to the APA. The district court did not have jurisdiction under the APA to void the Board's approval of Nebraska Beef's application based on the absence of rules and regulations.

The plaintiffs agree with the State defendants and Nebraska Beef that their petition was not an appeal of a "contested case" under the APA. Instead, the plaintiffs assert that their lawsuit is an original equity action seeking to enjoin public officials from expending funds. Therefore, we next examine the district court's jurisdiction with regard to equity actions.

### (b) Equity Jurisdiction

The plaintiffs' second cause of action, brought under the Uniform Declaratory Judgments Act, requested a declaratory judgment that the Board's actions were void because the Board acted without statutory authority, and without rules and regulations. The district court rejected the plaintiffs' request for a declaratory judgment. In rejecting this request, the district court addressed only the plaintiffs' allegation that the Act intended to encourage business relocation and expansion in Nebraska, but because Nebraska Beef was already operating in Nebraska, the Board could not justify its decision on this statutory ground. The district court stated, however, that this was only one of several factors for the Board to consider in reviewing an application under § 77-4928(4), and denied the plaintiffs' request for declaratory judgment pursuant to the Uniform Declaratory Judgments Act.

Although the district court denied the plaintiffs' request for relief under their second cause of action, it did not specifically address the plaintiffs' request for a declaratory judgment to void the Board's decision based on a lack of rules and regulations. Thus, the plaintiffs urge that although the district court incorrectly granted them relief under the APA, the judgment should still be affirmed because the court reached the correct decision. See *Gestring v. Mary Lanning Memorial Hosp.*, 259 Neb. 905, 613 N.W.2d 440 (2000). This argument fails, however; although the plaintiffs noted that the district court did not have jurisdiction for the grounds upon which it granted them relief, they did not attempt to rectify this error on cross-appeal.

A cross-appeal must be properly designated, pursuant to Neb. Ct. R. of Prac. 9D(4) (rev. 2000), if affirmative relief is to be obtained. *Workman v. Workman*, 262 Neb. 373, 632 N.W.2d 286 (2001). Affirmative relief, for purposes of appeal, is a reversal, vacation, or modification of a lower court's judgment, decree, or final order. *McDonald v. DeCamp Legal Servs.*, 260 Neb. 729, 619 N.W.2d 583 (2000). An appellee's argument that a lower court's decision should be upheld on grounds specifically rejected below constitutes a request for affirmative relief, and the appellee must cross-appeal in order for that argument to be considered. *Id.* An appellee may not raise arguments independent of or not responsive to an appellant's assignments of error without cross-appealing because they will fall beyond the scope of the case as presented in the appellant's brief. *Workman, supra.*

In this case, the district court rejected the plaintiffs' request for relief under the Uniform Declaratory Judgments Act, although it did not specifically consider the request for relief on the ground that the Board acted without rules and regulations. Even though the district court found that the Board's actions in the absence of rules and regulations were void under the APA, we concluded above that the district court did not have jurisdiction to make such a determination under the APA.

The plaintiffs argue that the district court correctly found that the Board's actions should be void, even if the district court lacked the jurisdiction to consider the plaintiffs' petition as an appeal of a "contested case" under the APA, and specifically rejected their declaratory judgment action below. A proper result

will not be reversed merely because it was reached for the wrong reason. *Gestring, supra.* This case, however, does not present a problem of errant reasoning, but one of jurisdiction. When a lower court lacks the authority to exercise its subject matter jurisdiction so as to adjudicate the merits of a claim, issue, or question, an appellate court also lacks the power to determine the merits of the claim, issue, or question presented to the lower court. *Kovar v. Habrock*, 261 Neb. 337, 622 N.W.2d 688 (2001). The plaintiffs did not cross-appeal to receive a declaratory judgment pursuant to the Uniform Declaratory Judgments Act based on their rules and regulations argument, despite agreeing with Nebraska Beef and the State defendants that the district court did not have "contested case" jurisdiction under the APA.

We note that parties cannot confer or concede subject matter jurisdiction upon a judicial tribunal by either acquiescence or consent, nor may subject matter jurisdiction be created or conceded by waiver, estoppel, consent, or conduct of the parties; thus, the plaintiffs' statement that the district court did not have jurisdiction does not constitute an admission subjecting them to the consequences of such. See *Creighton St. Joseph Hosp. v. Tax Eq. & Rev. Comm.*, 260 Neb. 905, 620 N.W.2d 90 (2000). However, because the district court lacked jurisdiction to enter a declaratory judgment under the APA, and because the plaintiffs did not cross-appeal the district court's denial of a declaratory judgment under the Uniform Declaratory Judgments Act, we cannot consider whether the district court should have entered a declaratory judgment on grounds other than a "contested case" appeal from the APA.

The plaintiffs assert that their case arises from an original equity action. We have determined above that relief is not available in the form of a declaratory judgment; injunctive relief is not available either. The plaintiffs' petition sought an injunction enjoining the Board from approving any applications until the Department of Revenue promulgated rules and regulations, and a permanent injunction enjoining Balka, his successors in interest, and anyone acting on his behalf from executing an agreement between the State and Nebraska Beef allowing the wage benefit credits approved by the Board. The plaintiffs have standing to bring this cause of action: A resident taxpayer, without showing

any interest or injury peculiar to itself, may bring an action to enjoin the illegal expenditure of public funds raised for governmental purposes. See, *Chambers v. Laughtenbaugh*, 263 Neb. 920, 644 N.W.2d 540 (2002); *Professional Firefighters of Omaha v. City of Omaha*, 243 Neb. 166, 498 N.W.2d 325 (1993); *Martin v. City of Lincoln*, 155 Neb. 845, 53 N.W.2d 923 (1952). The district court, however, did not issue any of the requested injunctions, and the plaintiffs did not cross-appeal on this ground.

█ In conclusion, the district court did not consider the plaintiffs' prayer for an injunction, but instead found their cause of action to be a "contested case" under the APA. An appellate court will not consider an issue on appeal that was not passed upon by the trial court. *Dossett v. First State Bank*, 261 Neb. 959, 627 N.W.2d 131 (2001). Based on this established rule and the plaintiffs' failure to cross-appeal, we will not consider whether the district court could have properly entered a declaratory judgment based on grounds other than a "contested case" under the APA. Because we determine that the district court lacked subject matter jurisdiction under the APA, we cannot reach the merits of the questions presented regarding the lack of rules and regulations when the Board rendered its approval of Nebraska Beef's application for wage benefit tax credits. See *Kovar v. Habrock*, 261 Neb. 337, 622 N.W.2d 688 (2001).

## 2. Closed Session Under Public Meetings Laws

The plaintiffs' cross-appeal assigns four errors related to the district court's rejection of their cause of action under the public meetings laws. First, the district court found that the Board's meeting on August 14, 1996, did not constitute a substantial violation of the public meetings laws, as the Board took no final action and its reasons for convening a closed session "seem[ed] valid." Second, the district court determined that although the Board did not give a legitimate reason for discussing Nebraska Beef's application in closed session at the November 25 meeting, Wasikowski's presence at the meeting and failure to object waived the plaintiffs' right to complain under the public meetings laws.

### (a) Waiver of Right to Object to Closed Session

█ Wasikowski attended the Board's November 25, 1996, meeting and did not object to its convening a closed session; the

district court concluded that her failure to object waived her ability to do so at a later date. This court has stated that any person who has notice of a meeting and attends the meeting must object specifically to the lack of public notice at the meeting, or that person will be held to have waived the right to object on that ground at a later date. See, *Otey v. State*, 240 Neb. 813, 485 N.W.2d 153 (1992); *Witt v. School District No. 70*, 202 Neb. 63, 273 N.W.2d 669 (1979). A timely objection will permit the public body to remedy its mistake promptly and defer formal action until the required public notice can be given. *Id.*

Neb. Rev. Stat. § 84-1414(3) (Reissue 1999) states that "[a]ny citizen of this state may commence a suit . . . for the purpose of requiring compliance with or preventing violations of [the public meetings laws], for the purpose of declaring an action of a public body void . . . ." In *Otey, supra*, and *Witt, supra*, this court considered a lack of sufficient public notice pursuant to Neb. Rev. Stat. § 84-1411 (Cum. Supp. 1998); the present case deals with objection to a closed session under Neb. Rev. Stat. § 84-1410 (Reissue 1999). Both sufficient notice and closed sessions, however, relate to § 84-1414, under which citizens may commence lawsuits regarding compliance with or violations of the public meetings laws. Thus, despite the difference in grounds for objection, the logic in *Otey, supra*, and *Witt, supra*, applies equally to this case: If a person present at a meeting observes an alleged public meetings laws violation in the form of an improper closed session and fails to object, that person waives his or her right to object at a later date.

Contrary to the district court's conclusion, however, Wasikowski's failure to object should not be imputed to the other plaintiffs in this case—to do so would eviscerate the language of § 84-1414, in that "[a]ny citizen of this state" may commence a suit for public meetings laws violations. The "public interest" mentioned in § 84-1410 is that shared by citizens in general and by the community at large concerning pecuniary or legal rights and liabilities. *Grein v. Board of Education*, 216 Neb. 158, 343 N.W.2d 718 (1984). If we were to conclude that Wasikowski's failure to object at the meeting waived the right of the other plaintiffs to object, the unintended result would be that Wasikowski's failure to object waived the right of all potential

plaintiffs to do so. The statute does not support that result. In the absence of anything to the contrary, statutory language is to be given its plain and ordinary meaning. *Haber v. V & R Joint Venture*, 263 Neb. 529, 641 N.W.2d 31 (2002). Additionally, public meetings laws are broadly construed so as to obtain the objective of openness in favor of the public. See *Rauert v. School Dist. 1-R of Hall Cty.*, 251 Neb. 135, 555 N.W.2d 763 (1996). Thus, although Wasikowski may have waived her individual right to object to the closed session, the other plaintiffs' rights to object are intact. The district court erred in concluding otherwise.

### (b) Closed Session Meetings

The plaintiffs assign that the district court erred in determining that the Board did not commit a substantial violation of the public meetings laws by holding closed sessions during its August 14 and November 25, 1996, meetings.

The Nebraska public meetings laws are a statutory commitment to openness in government. *Grein, supra.* The public meetings laws allow meetings to be closed only under limited circumstances. Neb. Rev. Stat. § 84-1408 (Reissue 1999). Any public body may hold a closed session by the affirmative vote of a majority of its voting members, if a closed session is clearly necessary for the protection of the public interest or for the prevention of needless injury to the reputation of an individual. § 84-1410(1). Closed sessions may be held for, but not limited to: strategy sessions with respect to collective bargaining, real estate purchases, pending or imminent litigation, discussion regarding deployment of security personnel or devices, investigative proceedings into allegations of criminal conduct, or evaluation of the job performance of a person when necessary to protect the reputation of that person, and the person has not requested a public meeting. § 84-1410(1)(a) through (d).

In contrast, § 77-4928(3) of the Act states: "The application [for wage benefit tax credits] and all supporting information shall be confidential except for the name of the company, the location of the project, the amounts of increased employment and investment, the result of the net benefit calculations, and whether the application has been approved." The plaintiffs argue that this confidentiality requirement applies only to the application itself

and did not create an exception to the public meetings laws for the Board's decisionmaking process.

■ We disagree. The Legislature holds the power to decide the scope of citizen access to governmental meetings. Through the public meetings laws, the Legislature committed state agencies, boards, and other public bodies to an open interaction between state citizens and state government. However, the Legislature retains the power to limit access to public meetings through provisions such as § 77-4928(3). The presence of the public meetings laws does not prevent the Legislature from later limiting the scope of those laws in specific situations, such as application reviews under the Act. In the absence of a constitutional claim, we do not judicially consider the Legislature's enacted limitations on public access to meetings. Statutory language is to be given its plain and ordinary meaning. See *Haber v. V & R Joint Venture*, 263 Neb. 529, 641 N.W.2d 31 (2002). A plain reading of § 77-4928(3) reveals that the Legislature determined that most of the information in applications under the Act should be kept confidential, without exception or limitation. The extent of protection of confidential information for potential applicants under the Act is a policy determination within the province of the Legislature.

Although the district court erred in finding that Wasikowski waived the rights of all other plaintiffs by failing to object at the Board's November 25, 1996, closed session, we conclude that the court did not err in determining that the Board did not violate the public meetings laws when it went into closed session for the purpose of considering confidential portions of Nebraska Beef's wage benefit credit application at its meetings on August 14 and November 25, 1996.

## VI. CONCLUSION

For the reasons stated above, we conclude that the district court erred in finding that it had "contested case" jurisdiction under the APA such that it could void the agreement between Nebraska Beef and the State defendants. We also determine that the district court erred in finding that Wasikowski waived the rights of all other plaintiffs to object to the Board's closed session by failing to object at the meeting she attended. We conclude, however, that

the district court did not err in its other determinations with regard to the plaintiffs' public meetings laws claims. We, therefore, reverse the judgment of the district court and remand this cause with directions to dismiss all claims brought in case No. 558-163, i.e., the APA, Uniform Declaratory Judgments Act, and due process claims relating to the lack of rules and regulations. We affirm the district court's judgment dismissing the plaintiffs' public meetings laws claims in case No. 562-086.

AFFIRMED IN PART, AND IN PART REVERSED AND
REMANDED WITH DIRECTIONS TO DISMISS.