STOETZEL & SONS, INC., APPELLANT, V. CITY OF HASTINGS
AND BOARD OF PUBLIC WORKS, APPELLEES.

658 N.W.2d 636

Filed March 28, 2003.    No. S-01-1379.

Christopher D. Curzon, of Dwyer, Smith, Gardner, Lazer, Pohren, Rogers & Forrest, for appellant.

Robert T. Grimit, of Baylor, Evnen, Curtiss, Grimit & Witt, L.L.P., and Stephen A. Scherr, of Whelan & Scherr, for appellees.

HENDRY, C.J., WRIGHT, CONNOLLY, GERRARD, STEPHAN, McCORMACK, and MILLER-LERMAN, JJ.

CONNOLLY, J.

The appellant, Stoetzel & Sons, Inc. (Stoetzel), bid on a contract to construct a service department warehouse for the City of Hastings (City). At an open meeting held on November 13, 1998, the board of public works (Board) accepted the lower bid of a competing contractor. Stoetzel claims it is entitled to injunctive relief because of alleged irregularities in the bidding process. It also claims that the Board violated the public meetings law by failing to make the submitted bids available at the November 13 meeting. See Neb. Rev. Stat. § 84-1412(8) (Cum. Supp. 2002).

The district court granted summary judgment for the City on Stoetzel's cause of action for injunctive relief and directed a verdict for the City on the public meetings law cause of action. Because we conclude that the cause of action for injunctive relief is moot and that Stoetzel waived its public meetings law cause of action, we affirm.

## FACTUAL BACKGROUND

### BID PROPOSAL AND SPECIFICATIONS

In 1998, the Board authorized Hastings Utilities to let bids for the construction of a service department warehouse. The Board directs the operations of Hastings Utilities for the City. The Hastings Utilities staff prepared a document entitled "Bid Proposal and Specifications" and distributed it to prospective bidders. The document divided the warehouse project into three sections: section I was a prefabricated metal building, section II was the site work, and section III was a pond ash fill. Bidders could bid on any one or all of the sections.

The bid proposal and specifications set out instructions for how the bids were to be made. These instructions stated, "All Proposals shall be submitted on the Proposal forms hereto attached . . . ." Stoetzel contends that the instructions and the proposal forms required a unit-price bid, rather than a lump-sum bid, for each section of the project for which a contractor submitted a bid. A unit-price bid requires the bidder to itemize the elements and materials of a project. By contrast, a lump-sum bid is a single bid for the full amount of a project. Stoetzel argues that it is entitled to injunctive relief because the City gave other bidders oral permission to submit lump-sum bids on section I of the warehouse without timely notifying Stoetzel of the change.

The parties dispute to what extent the City could alter or waive the requirements in the bid proposal and specifications. It provided that Hastings Utilities reserves the right (1) to accept the proposal which best suits its needs whether the price is the lowest or not, (2) to reject any or all bids, (3) to waive any informalities, and (4) to reject any and all proposals and to waive technical errors as may be deemed best for the interest of the City. The City argues that under these provisions, Hastings Utilities was responsible for the bidding process and had broad discretion to waive

errors and alter the bidding requirements. Stoetzel conceded that the City had the authority to waive minor errors or omissions, but contends that the actions taken by the City went beyond this authority. It also argues that under the bid proposal and specifications, any changes to the bidding instructions had to be in writing.

## BIDDING PROCESS

The bidding was set to close on November 10, 1998. On November 6, a representative of Westland Building Company (Westland), one of the competing bidders, telephoned Marty Stange, Hastings Utilities' chief civil and environmental engineer. The representative told Stange that Westland was having difficulty "getting all the subcontractor prices." Stange told the representative that Westland did not have to fill out every unit price, but warned that if Westland did not fill out the unit prices, it "should take that as an exception at [its] own risk."

According to Stange, on November 9, 1998, he contacted another bidder, Farris Construction, Inc. (Farris), and told it that, like Westland, it did not have to fill out every unit price if it was having difficulty getting information from subcontractors. Stoetzel was also notified that it did not have to fill out every unit price, but the parties dispute when it received the information. The City claims that an employee of Hasting Utilities telephoned Stoetzel and left a message with someone on November 9. Stoetzel claims that it never received the message and was not notified of the change until November 10, 2 to 3 hours before the bids were due.

Six bidders eventually submitted sealed bids for all or part of the service department warehouse project. Stoetzel bid on sections I and II of the project. It is undisputed that Stoetzel's bid complied with the requirements of the original bid proposal and specifications. Two other bidders, Westland and Farris, bid on section I. Both submitted lump-sum, rather than unit-price, bids. Of the three bids, Westland's was the lowest, Farris' was the second lowest, and Stoetzel's was the highest.

Stoetzel, Westland, Farris, and Werner Construction (Werner) submitted bids on section II of the project. Both Farris and Westland submitted unit-price bids for section II. Werner's bid was the lowest, and Stoetzel's bid was the second lowest.

The bids were opened on November 10, 1998. Later that day, Stange telephoned Westland and requested several unit prices so that he could evaluate Westland's lump-sum bid on section I of the project. Stange wrote these estimates on Westland's bid. Stoetzel argues that in requesting and writing down the unit prices, Stange acted inconsistently with several provisions of the bid proposal and specifications.

On November 11, 1998, Hastings Utilities released a table identifying the bidders and the amounts of their bids. In an accompanying report, Hastings Utilities recommended to the Board that Westland be awarded section I of the project and that Werner be awarded section II. The Board accepted these recommendations at an open meeting on November 13. This meeting is discussed in greater detail below.

### NOVEMBER 13, 1998, BOARD MEETING

As previously noted, the Board held a regularly scheduled open meeting on November 13, 1998. During the meeting, the Board discussed the bids on the warehouse project and accepted Hastings Utilities' recommendations. Stoetzel now complains that the November 13 meeting failed to comply with the public meetings law. See Neb. Rev. Stat. § 84-1408 et seq. (Reissue 1999 & Cum. Supp. 2002).

Stoetzel complains that the City violated § 84-1412(6) (Reissue 1999), which provided, at the time of the meeting, that "[p]ublic bodies shall make available at the meeting, for examination and copying by members of the public, at least one copy of all reproducible written material to be discussed at an open meeting." Isadore H. Stoetzel (Isadore), the owner of Stoetzel, attended the November 13, 1998, meeting and expressed his concerns that the bidding process had been unfair. According to Isadore, the only document circulated at the meeting was the summary of the bids prepared by Hastings Utilities. He complains that under § 84-1412(6), the underlying bids should also have been made available.

Isadore admitted that before the Board adjourned, he did not object to the fact that the bids were unavailable. According to Isadore, immediately after the Board adjourned, he approached Stange and requested that he be allowed to see the bids. Stange

refused and directed Isadore to Marvin Schultes, the Hastings Utilities' manager. Isadore then contacted Schultes and asked to see the bids. Schultes refused. Although Schultes and Stange were present at the meeting, neither was a member of the Board. No evidence suggests that Isadore expressed his desire to see the bids to a Board member either before or after the Board adjourned.

Since the board meeting, the Legislature has amended § 84-1412(6), and it has been moved to § 84-1412(8). The differences between §§ 84-1412(6) (Reissue 1999) and 84-1412(8) (Cum. Supp. 2002) are not material for the purposes of this appeal, and to simplify our discussion, we will hereinafter refer to § 84-1412(8) only.

## PROCEDURAL BACKGROUND

On December 8, 1998, the City executed a contract with Westland. Construction on the warehouse apparently began shortly thereafter.

Stoetzel initially filed this action on December 30, 1998, and filed an amended petition on May 25, 1999. The amended petition named the City, the Board, and Westland as defendants. Although Westland was named as a defendant, it apparently did not receive a summons.

In its amended petition, Stoetzel alleged four causes of action. In its first cause of action, it sought a permanent injunction and alleged that the City, "without proper authority to do so pursuant to the Bid Documents it approved, orally amended the terms of the Bid Documents to provide for a 'lump sum' bid and failed to give proper notice to Plaintiff." In its second cause of action, specific performance, Stoetzel alleged that it was the only bidder which followed the bidding requirements and that it was entitled to have the contract awarded to it. For its third cause of action, Stoetzel sought to void the Board's acts in approving and ratifying the contract because the November 13, 1998, meeting violated the public meetings law. In its fourth cause of action, Stoetzel sought to recover lost profits.

On May 26, 1999, Stoetzel moved for a temporary injunction. The court held a hearing on the temporary injunction on June 28. By this time, Westland had completed a substantial portion of the project and the City had paid about 40 percent of the contract

price to Westland. The court denied the temporary injunction on August 2, reasoning that the "motion [was] neither timely nor appropriate under the facts of the case."

At some point after the denial of the temporary injunction but before trial, Westland was dismissed from the action. The record does not show why or the exact date of the dismissal, and Westland is not a party to this appeal.

In November 1999, both Stoetzel and the City moved for summary judgment. On January 25, 2001, the court granted partial summary judgment for the City on Stoetzel's causes of action for injunctive relief, specific performance, and lost profits, but concluded that a genuine issue of material fact existed on the public meetings law cause of action.

Final payment for the warehouse project was made in February 2000. By the time of trial, the project was complete.

Trial on the public meetings law cause of action was held on October 29, 2001. At the close of Stoetzel's evidence, the court entered a directed verdict for the City. The court held that to maintain an action for the failure of a public body to produce documents at a public meeting, a party must have requested the documents during the meeting. The court rejected Stoetzel's argument that Isadore had preserved its cause of action by requesting the bids from Stange and Schultes immediately after the Board adjourned. The court also found that Stoetzel failed to prove that the documents it sought were not available at the meeting.

## ASSIGNMENTS OF ERROR

Stoetzel assigns as error the court's entry of (1) summary judgment on its cause of action for injunctive relief and (2) directed verdict on its public meetings law cause of action.

## STANDARD OF REVIEW

An action for injunction sounds in equity. *Reichert v. Rubloff Hammond, L.L.C.*, 264 Neb. 16, 645 N.W.2d 519 (2002). Actions for relief under the public meetings law are tried as equitable cases, given that the relief sought is in the nature of a declaration that action taken in violation of the laws is void or voidable. Thus, the approach taken is that such cases are tried and reviewed by the appellate courts as equity cases. *Hauser v. Nebraska Police Stds. Adv. Council*, 264 Neb. 944, 653 N.W.2d 240 (2002).

■ In an appeal of an equitable action, an appellate court tries factual questions de novo on the record and reaches a conclusion independent of the findings of the trial court, provided, where credible evidence is in conflict on a material issue of fact, the appellate court considers and may give weight to the fact that the trial judge heard and observed the witnesses and accepted one version of the facts rather than another. *Id.*

■ Summary judgment is proper when the pleadings, depositions, admissions, stipulations, and affidavits in the record disclose that there is no genuine issue as to any material fact or as to the ultimate inferences that may be drawn from those facts and that the moving party is entitled to judgment as a matter of law. *Skinner v. Ogallala Pub. Sch. Dist. No. 1*, 262 Neb. 387, 631 N.W.2d 510 (2001).

■ When a motion for directed verdict made at the close of all the evidence is overruled by the trial court, appellate review is controlled by the rule that a directed verdict is proper only where reasonable minds cannot differ and can draw but one conclusion from the evidence, and the issues should be decided as a matter of law. *Jay v. Moog Automotive*, 264 Neb. 875, 652 N.W.2d 872 (2002).

■ A jurisdictional question which does not involve a factual dispute is determined by an appellate court as a matter of law, which requires the appellate court to reach a conclusion independent of the lower court's decision. *Fischer v. Cvitak*, 264 Neb. 667, 652 N.W.2d 274 (2002).

## ANALYSIS

On appeal, Stoetzel does not assign as error the entry of summary judgment on its claims for specific performance and lost profits. It does, however, assign as error the entry of summary judgment on its cause of action for injunctive relief and the entry of a directed verdict on its public meetings law cause of action. We address these two causes of action separately.

### INJUNCTIVE RELIEF

Stoetzel sought to enjoin the execution of the contract with Westland and the construction of the service warehouse because of alleged irregularities in the bidding process. Before reaching the merits of Stoetzel's argument that the court erred in granting

summary judgment on its cause of action for injunctive relief, we must determine if the completion of the service warehouse has rendered the issue moot.

A case becomes moot when the issues initially presented in litigation cease to exist or the litigants lack a legally cognizable interest in the outcome of litigation. *Putnam v. Fortenberry*, 256 Neb. 266, 589 N.W.2d 838 (1999). A moot case is one which seeks to determine a question which does not rest upon existing facts or rights, in which the issues presented are no longer alive. *Id.* As a general rule, a moot case is subject to summary dismissal. *Id.*

On several previous occasions, we have addressed situations where the action a party is seeking to enjoin has been completed before we can review the lower court's decision. See, e.g., *Prucha v. Kahlandt*, 260 Neb. 366, 618 N.W.2d 399 (2000); *Putnam v. Fortenberry, supra*; *Koenig v. Southeast Community College*, 231 Neb. 923, 438 N.W.2d 791 (1989). We have recognized that "injunctive relief is preventive, prohibitory, or protective, and equity usually will not issue an injunction when the act complained of has been committed and the injury has been done." *Putnam v. Fortenberry*, 256 Neb. at 270, 589 N.W.2d at 842-43. We have also said:

> " 'Since the purpose of an injunction is not to afford a remedy for what is past but to prevent future mischief, not being used for the purpose of punishment or to compel persons to do right but merely to prevent them from doing wrong, rights already lost and wrongs already perpetrated cannot be corrected by injunction.' "

*Id.* at 271, 589 N.W.2d at 843 (quoting *Conrad v. Kaup*, 137 Neb. 900, 291 N.W. 687 (1940)).

In *Putnam*, the plaintiff sought to enjoin the City of Lincoln from selling a publicly owned hospital to a private company. A few days after the plaintiff had brought her action, the city council passed an ordinance approving the sale. Within 3 weeks, the city and the private company had entered into an affiliation agreement that set a closing date. Three weeks later, the court denied the plaintiff's request for temporary and permanent injunctive relief. Before the plaintiff appealed, the city and the private company had closed the sale and the title to the

hospital was transferred. The record did not reveal a stay or a supersedeas bond before or after the filing of the notice of appeal. *Id.* We said "[b]ecause the act which [the plaintiff] sought to enjoin is complete, our opinion on the trial court's denial of injunction would be nugatory. We, therefore, conclude that the issue of injunctive relief is moot." *Id.* at 272, 589 N.W.2d at 843.

Here, Stoetzel waited 6 weeks after the November 13, 1998, meeting before filing suit. By that time, the City had executed the contract with Westland. Although it was aware that Westland had began construction on the warehouse, Stoetzel waited 6 months before seeking a temporary injunction. By that time, the construction was almost 50 percent complete. After the court denied its temporary injunction, Stoetzel waited almost 15 months before moving for summary judgment. By the time Stoetzel moved for summary judgment, the warehouse was complete and the contract with Westland was fully executed. The record does not show either a stay or a supersedeas bond filed before or after the filing of the notice of appeal.

The actions which Stoetzel sought to enjoin—the execution of the contract with Westland and the construction of the warehouse—have long been completed and, just as in *Putnam v. Fortenberry*, 256 Neb. 266, 589 N.W.2d 838 (1999), any opinion would be worthless. In short, the " 'bell has been rung,' " and no court in Nebraska could " 'unring it.' " *Knaust v. City of Kingston N.Y.*, 157 F.3d 86, 88 (2d Cir. 1998) (quoting *CMM Cable Rep. v. Ocean Coast Properties, Inc.*, 48 F.3d 618 (1st Cir. 1995)). See, also, *Bayou Liberty Ass'n, Inc. v. U.S. Army Corps of Engineers*, 217 F.3d 393, 396 (5th Cir. 2000) ("[w]hen a party seeks an injunction to halt a construction project the case may become moot when a substantial portion of that project is complete"); *Winter Brothers v. City of Beresford*, 652 N.W.2d 99 (S.D. 2002); *Natick Auto Sales, Inc. v. DPGS*, 47 Mass. App. 625, 715 N.E.2d 84 (1999). Thus, we conclude that Stoetzel's cause of action for injunctive relief is moot.

As a general rule, a moot case is subject to summary dismissal. *Putnam v. Fortenberry, supra.* Nebraska, however, recognizes a public interest exception to the mootness doctrine, and we must consider whether the exception applies to this case. See

*Koenig v. Southeast Community College*, 231 Neb. 923, 438 N.W.2d 791 (1989).

██ The public interest exception to the rule precluding consideration of issues on appeal because of mootness requires the consideration of the public or private nature of the question presented, the desirability of an authoritative adjudication for guidance of public officials, and the likelihood of recurrence of the same or a similar problem. *Putnam v. Fortenberry, supra.* If we were to reach the merits of Stoetzel's cause of action for an injunction, it would require an analysis of factors unique to this case. Such factors would include the proper interpretation of the terms of the bid proposal and specifications, the conduct of Stange before and after the bids, and the failure of Stoetzel to expedite the litigation. It is unlikely that we will be presented with a similar factual situation. We decline to apply the public interest exception to the mootness doctrine.

### PUBLIC MEETING

Stoetzel claims that the Board violated the public meetings law, § 84-1408 et seq. The court directed a verdict for the City on this cause of action.

Section 84-1414(1) requires a court to declare any formal action taken by a public body in violation of the public meetings law void if the suit is commenced within 120 days of the meeting at which the violation occurred. Stoetzel claims that the Board's acceptance of the bids at the November 13, 1998, meeting violated § 84-1412(8), which states that "[p]ublic bodies shall make available at the meeting . . . for examination and copying by members of the public, at least one copy of all reproducible written material to be discussed at an open meeting." At the November 13 meeting, the Board discussed only the bid summary and the recommendations prepared by Hastings Utilities. Stoetzel concedes that the Board made both of these documents available to the public at the meeting. It argues, however, that the City violated § 84-1412(8) by failing to make the underlying bids available at the November 13 meeting of the Board as well.

The City, however, argues that even if the Board violated § 84-1412(8), Stoetzel waived its right to challenge the alleged violation. The trial court's order directing a verdict for the City is

somewhat ambiguous, but it appears that the City's waiver argument was at least one reason for the court's decision. Accordingly, we address the question.

In several prior cases, we have recognized that when a person attends a public meeting and fails to object to a purported violation of the public meetings law, that person is prevented from asserting the violation in a subsequent court action. See, *Hauser v. Nebraska Police Stds. Adv. Council*, 264 Neb. 944, 653 N.W.2d 240 (2002); *Wasikowski v. Nebraska Quality Jobs Bd.*, 264 Neb. 403, 648 N.W.2d 756 (2002); *Otey v. State*, 240 Neb. 813, 485 N.W.2d 153 (1992); *Witt v. School District No. 70*, 202 Neb. 63, 273 N.W.2d 669 (1979); *Alexander v. School Dist. No. 17*, 197 Neb. 251, 248 N.W.2d 335 (1976). The rule recognizes that a timely objection permits "the public body to remedy its mistake promptly and defer formal action until" the deficiency can be rectified. *Hauser v. Nebraska Police Stds. Adv. Council*, 264 Neb. at 949, 653 N.W.2d at 244.

The same reasoning is equally applicable to violations of § 84-1412(8). If a person who attends a public meeting believes that § 84-1412(8) requires that documents be made available at the meeting, a timely objection will give the Board an opportunity to remedy the situation.

Here, the parties dispute whether Isadore made a timely objection. Isadore did not request to see the documents until immediately after the Board adjourned. The City argues that an objection to a violation of § 84-1412(8) must be made during the meeting and that the meeting ends when the public body adjourns. Stoetzel argues that a meeting begins when a majority of public officials have begun to arrive, mingle, and prepare for the meeting and that it ends when a majority of public officials are no longer mingling after the meeting.

However, we find it unnecessary to reach the question of when an objection to a violation of § 84-1412(8) must be made. When Isadore requested to see the underlying bids, he did not make the request to a Board member. Instead, after the meeting, he approached Stange, a Hastings Utilities engineer. Stange refused to let him see the bids, but directed him to Schultes, the Hastings Utilities manager. Schultes also declined to show the bids to

Isadore. Although both Stange and Schultes were at the meeting, neither were Board members.

It is implicit in our rule requiring a person attending a public meeting to object to a public meetings law violation that the objection must be made to the public body or to a member of the public body. Section 84-1412(8) creates duties running directly from public bodies to members of the public. If the objection is made directly to the public body or to a member of the public body, it guarantees that the public body has an opportunity to consider and correct any alleged violation. But if the objection is made to a public employee or to another member of the public who is at the meeting, there is no guarantee that the public body will receive the objection and have the opportunity to correct it.

We hold that to preserve an objection to a § 84-1412(8) violation, a person who attends a public meeting must not only object to the violation, but must make that objection to the public body or to a member of the public body. Because Isadore never made his request to see the bid documents to a Board member, he waived his claim that the Board violated § 84-1412(8).

## CONCLUSION

Stoetzel's cause of action for injunctive relief is moot, and it waived its public meetings law cause of action. Accordingly, we affirm.

AFFIRMED.