MARLOWE RATH, A RESIDENT TAXPAYER OF SUTTON,
CLAY COUNTY, NEBRASKA, APPELLANT, V.
CITY OF SUTTON, A CITY OF THE
SECOND CLASS, ET AL., APPELLEES.

673 N.W.2d 869

Filed January 23, 2004.   No. S-02-1174.

Craig C. Dirrim and Kerry L. Kester, of Woods & Aitken, L.L.P., for appellant.

Kevin J. Schneider and Pamela Epp Olsen, of Cline, Williams, Wright, Johnson & Oldfather, P.C., and, of Counsel, Don C. Bottorf, of Bottorf & Maser, for appellees City of Sutton, mayor of City of Sutton, and members of Sutton City Council.

David A. Hecker and Richard P. Jeffries, of Kutak Rock, L.L.P., for appellee Van Kirk Sand & Gravel, Inc.

CONNOLLY, GERRARD, STEPHAN, McCORMACK, and MILLER-LERMAN, JJ.

GERRARD, J.

The City of Sutton, Nebraska (City), sought to make improvements to its wastewater treatment facility. The City received bids from a number of construction companies, including JJ Westhoff Construction Company, Inc. (Westhoff), and Van Kirk Sand &

Gravel, Inc. (Van Kirk). The Sutton City Council (City Council) awarded the contract for the project to Van Kirk, a local contractor, despite the fact that Westhoff's bid was $16,000 lower. The question presented on appeal is whether the City impermissibly awarded the contract to someone other than the lowest responsible bidder in contravention of Neb. Rev. Stat. §§ 17-918 and 18-507 (Reissue 1997).

## FACTUAL AND PROCEDURAL BACKGROUND

In September 2001, the City advertised an invitation for bids for the construction of certain improvements to its wastewater treatment facility. The City's invitation for bids stated that the City would receive bids until October 3, 2001, at 1:30 p.m., at which time all bids would be publicly opened and read aloud. The invitation stated that each prospective bidder would be required to certify, by submitting "EPA Form 5700-49," that it was not presently debarred, suspended, proposed for debarment, declared ineligible, or voluntarily excluded from covered transactions by any federal department or agency. Additionally, the bidders were notified they would have to comply with certain rules regarding nondiscrimination in employment and the U.S. Environmental Protection Agency's Disadvantaged Business Enterprise (DBE) requirements.

The invitation for bids also stated that the City reserved "the right to reject any and all bids and to waive informalities in bids submitted and to accept whichever bid that is in the best interest of the City, at its sole discretion." Likewise, article 19 of the "Instructions to Bidders" purported to give the City, as the "Owner," nearly unbounded discretion in the bidding process.

> OWNER reserves the right to reject any or all Bids, including without limitation, nonconforming, nonresponsive, unbalanced, or conditional Bids. OWNER further reserves the right to reject the Bid of any Bidder whom it finds, after reasonable inquiry and evaluation, to be non-responsible. OWNER may also reject the Bid of any Bidder if OWNER believes that it would not be in the best interest of the Project to make an award to that Bidder. OWNER also reserves the right to waive all informalities not involving price, time, or changes in the Work and to negotiate contract terms with the Successful Bidder.

Van Kirk, a contractor located in Sutton, and Westhoff, a contractor located in Lincoln, Nebraska, submitted bids on the project. On October 3, 2001, the bids were opened and Westhoff's bid ($1,274,000) was lower than Van Kirk's bid ($1,290,000) by $16,000. Per the bid specifications, both Westhoff and Van Kirk listed August 15, 2002, as the substantial completion date and September 15 for the project's final completion date. Van Kirk's bid did not include the DBE requirements or form 5700-49. A public meeting to award the project was scheduled for October 9, 2001.

After the bids were unsealed, but before the October 9, 2001, meeting of the City Council, the president of Van Kirk sent a letter to the City urging the City Council to award the project to Van Kirk. The letter noted the amount of personal property taxes Van Kirk had paid in 2000 and the amount Van Kirk estimated it would pay in 2001. In addition, the letter stated the amount of money Van Kirk spent annually within the City and estimated the amount Van Kirk contributed to the City's economy each year. Van Kirk recognized that it was not the low bidder, but argued that the $16,000 difference in bids would be more than made up in overall economic benefits to the City if the project were awarded to a local contractor.

During the public meeting on October 9, 2001, the City Council noted the $16,000 difference in bids. The minutes of the meeting show that one council member stated that the difference in bids was not substantial and that by choosing Van Kirk, the wages would stay in the City. All four members of the City Council voted in favor of awarding the contract to Van Kirk, and the motion carried.

Westhoff protested this decision through a letter to the clerk of the City. In the letter, dated October 11, 2001, Westhoff argued that it was the lowest responsible bidder and threatened to pursue legal action if it were not awarded the contract. On October 23, Marlowe Rath, a taxpayer and resident of the City, instituted this action, at the request and with the funding of Westhoff, against the City, the City Council, the mayor, and Van Kirk (collectively the appellees). Essentially, Rath's petition claimed that the City failed to award the contract to the lowest responsible bidder.

After the lawsuit was filed, the City Council called a "special meeting" for October 31, 2001, to reconsider their decision. At the beginning of the special meeting, the mayor of the City, Virgil Ulmer, disclosed that he was a salaried employee of Van Kirk. He also stated that in the event the vote on awarding the contract resulted in a tie, he would not vote to break the tie. The record shows that Ulmer worked sporadically for Van Kirk between 1991 and 1996, when he became a permanent employee of Van Kirk. He was elected as the City's mayor in 1998. We note that Ulmer did not vote at the prior meeting, held on October 9, nor did he disclose his potential conflict of interest.

Westhoff presented no supporting evidence at the special meeting. Rather, it merely reminded the City Council that a lawsuit had been filed over the matter and restated its position that the award to Van Kirk was inappropriate and contrary to law. In response, the president of Van Kirk reiterated Van Kirk's status as a local contractor and argued that by selecting Van Kirk, the City would reap a variety of savings and economic benefits. Additionally, various persons presented oral testimony in favor of awarding the bid to Van Kirk, specifically emphasizing the positive economic impact its selection would have on the community.

The City Council then voted in favor of reconsidering the original award of the contract. During the subsequent discussion, each of the three present members of the City Council stated their support for awarding the contract to a local business. Generally speaking, they argued that awarding the contract to a local business would offset the $16,000 difference in bids and contribute positive economic benefits to the community. The City Council then voted 3 to 0 to award the contract to Van Kirk.

Rath's operative amended petition, filed December 3, 2001, sought to temporarily and permanently enjoin the City from (1) awarding the project to Van Kirk and (2) spending any public funds on the project until it was awarded to the lowest responsible bidder. In addition, the amended petition sought an order declaring the contract between Van Kirk and the City null and void.

On February 7, 2002, the district court issued an order on Rath's motion for a temporary injunction. The court found, inter

alia, that (1) both Westhoff and Van Kirk were deemed to be responsible bidders by the City, (2) Westhoff was the low bidder by $16,000, and (3) the only reason Westhoff did not receive the contract was that the City thought it would be best to award the project to a local bidder. Nonetheless, the court denied Rath's motion because it determined that Rath failed to show he would suffer irreparable injury if the injunction were not granted.

The parties submitted the case on a stipulated record. The court issued its order on October 2, 2002, and made findings nearly identical to those in its order of February 7. Specifically, the court determined that the evidence failed to show Rath would suffer irreparable injury if injunctive relief were not granted. The court denied Rath's request for permanent injunctive and declaratory relief on this basis.

Rath filed a timely notice of appeal, but did not request a stay or supersedeas bond. Therefore, because there was no court order prohibiting Van Kirk from proceeding with construction, Van Kirk began the work and, on September 30, 2003, completed the improvements to the wastewater treatment facility. The City remitted final payment to Van Kirk on July 23. On October 6, 1 day prior to oral argument in this court, the appellees, by way of separate motions, moved to dismiss Rath's appeal as moot. Rath opposed these motions, and we granted the parties additional time to brief the issue of mootness.

## ASSIGNMENTS OF ERROR

Rath claims, renumbered and restated, that the district court erred in (1) finding that a resident taxpayer claiming the illegal expenditure of public funds is required to prove more than the illegality of the expenditure in order to show irreparable harm; (2) construing the bidding statutes, §§ 17-918 and 18-507, to allow a city of the second class to have discretion in awarding a contract for the construction of a wastewater treatment facility or the improvement thereof; and (3) finding that Van Kirk's initial bid, which did not include the DBE requirements or form 5700-49, was responsive.

## STANDARD OF REVIEW

A jurisdictional question that does not involve a factual dispute is determined by an appellate court as a matter of law,

which requires the appellate court to reach a conclusion independent of the lower court's decision. *Stoetzel & Sons v. City of Hastings,* 265 Neb. 637, 658 N.W.2d 636 (2003).

■ An action for injunction sounds in equity. In an appeal of an equity action, an appellate court tries the factual questions de novo on the record and reaches a conclusion independent of the findings of the trial court. *Whipps Land & Cattle Co. v. Level 3 Communications,* 265 Neb. 472, 658 N.W.2d 258 (2003). See *State ex rel. City of Alma v. Furnas Cty. Farms,* 266 Neb. 558, 667 N.W.2d 512 (2003).

## ANALYSIS

### MOOTNESS

Essentially, the appellees argue that because construction of the wastewater treatment facility has been completed and Van Kirk has been paid in full, there is nothing left for this court to enjoin. Thus, according to the appellees, there is no live case or controversy, and an opinion passing on the propriety of the award to Van Kirk would be advisory. On the other hand, Rath argues that because he is seeking a declaration that the contract is null and void and because taxpayers have a right to recover all funds paid under an illegal contract, he is still entitled to a remedy, and that his appeal is not moot.

■ The contours of the doctrine of mootness are well established. A case becomes moot when the issues initially presented in litigation cease to exist or the litigants lack a legally cognizable interest in the outcome of litigation. *Stoetzel & Sons, supra;* *Putnam v. Fortenberry,* 256 Neb. 266, 589 N.W.2d 838 (1999). A moot case is one which seeks to determine a question which does not rest upon existing facts or rights, in which the issues presented are no longer alive. *Stoetzel & Sons, supra.*

■ Recently, we have addressed similar situations where the action a party was seeking to enjoin had been completed prior to our review of the lower court's decision. See, generally, *Stoetzel & Sons, supra; Prucha v. Kahlandt,* 260 Neb. 366, 618 N.W.2d 399 (2000); *Putnam, supra; Koenig v. Southeast Community College,* 231 Neb. 923, 438 N.W.2d 791 (1989). In these cases, we have emphasized the nature of injunctive relief, stating that "injunctive relief is preventative, prohibitory, or protective, and

equity usually will not issue an injunction when the act complained of has been committed and the injury has been done." See *Putnam*, 256 Neb. at 270, 589 N.W.2d at 842-43. Moreover,

> " '[s]ince the purpose of an injunction is not to afford a remedy for what is past but to prevent future mischief, not being used for the purpose of punishment or to compel persons to do right but merely to prevent them from doing wrong, rights already lost and wrongs already perpetrated cannot be corrected by injunction.' "

*Id.* at 271, 589 N.W.2d at 843, quoting *Conrad v. Kaup*, 137 Neb. 900, 291 N.W. 687 (1940).

Much like the aforementioned cases, the actions that Rath is seeking to enjoin—the execution of the contract with Van Kirk and the expenditure of public funds for the project—have been completed. Thus, any opinion on the court's denial of injunctive relief would be "worthless." See *Stoetzel & Sons v. City of Hastings*, 265 Neb. 637, 646, 658 N.W.2d 636, 643 (2003). Simply put, we lack the power, "once a bell has been rung, to unring it." See *CMM Cable Rep. v. Ocean Coast Properties, Inc.*, 48 F.3d 618, 621 (1st Cir. 1995). See, also, *Stoetzel & Sons, supra*. Rath's request for injunctive relief is moot.

We must, however, determine whether the declaratory judgment prayer has also been rendered moot, as the inability of the court to grant the injunction does not, by itself, render the declaratory action moot as well. See *Koenig, supra*.

> A declaratory judgment action becomes moot when the issues initially presented in the proceedings no longer exist or the parties lack a legally cognizable interest in the outcome of the action. . . . At the time that the declaration is sought, there must be an actual justiciable issue. . . . A justiciable issue requires a present, substantial controversy between parties having adverse legal interests susceptible to immediate resolution and capable of present judicial enforcement.

(Citations omitted.) *Putnam*, 256 Neb. at 272-73, 589 N.W.2d at 844. See, also, *Greater Omaha Realty Co. v. City of Omaha*, 258 Neb. 714, 605 N.W.2d 472 (2000); *Koenig, supra*.

The actions Rath is seeking to enjoin are predicated on an alleged illegal expenditure of public funds. Rath argues that

notwithstanding completion of the project and payment of all funds, relief is still available because a taxpayer has a right to recover the funds expended under an illegal contract. See *Cathers v. Moores*, 78 Neb. 17, 113 N.W. 119 (1907). According to Rath, a declaration of the contract's illegality maintains the action because he can then seek to recover the illegally expended funds. In other words, Rath is arguing that the City could not divest this court of jurisdiction by paying out the money on an illegal contract. See, *Faden, Aplnt. v. Phila. Housing Auth.*, 424 Pa. 273, 227 A.2d 619 (1967); *Egidi v. Town of Libertyville*, 218 Ill. App. 3d 596, 578 N.E.2d 1300, 161 Ill. Dec. 654 (1991).

To a certain extent, Rath is correct. Obviously, petitions that seek restitution damages, refund damages, lost profits, or other types of monetary relief do not become moot upon completion of the project. As noted elsewhere, a "suit that seeks damages for harm caused by past practices is not rendered moot by the cessation of the challenged conduct." *CMM Cable Rep.*, 48 F.3d at 621. See, also, *Curtis Indus., Inc. v. Livingston*, 30 F.3d 96 (8th Cir. 1994).

Here, however, Rath did not seek to recover the funds that may have been illegally expended under the City's contract with Van Kirk. His petition sought only injunctive and declaratory relief, plus such other relief that the court deemed proper. In order to be entitled to recoup the illegally expended funds, Rath was required to specifically request such relief in his petition. See, *Alexander v. School Dist. No. 17*, 197 Neb. 251, 248 N.W.2d 335 (1976); *National Fire Ins. Co. v. Evertson*, 153 Neb. 854, 46 N.W.2d 489 (1951). Therefore, a declaration by this court on the legality of the contract between Van Kirk and the City would be advisory because it would have no effect on the parties *in this case*. And, as we have said before, " 'declaratory relief cannot be used to obtain a judgment which is merely advisory.' " See *Putnam v. Fortenberry*, 256 Neb. 266, 273, 589 N.W.2d 838, 844 (1999), quoting *Galyen v. Balka*, 253 Neb. 270, 570 N.W.2d 519 (1997). Rath's request for declaratory relief is also moot.

### PUBLIC INTEREST EXCEPTION

As a general rule, a moot case is subject to summary dismissal. *Stoetzel & Sons v. City of Hastings*, 265 Neb. 637,

658 N.W.2d 636 (2003). Nebraska, however, recognizes a public interest exception to the mootness doctrine, and we must consider whether it is applicable in this case. The exception requires the consideration of (1) the public or private nature of the question presented, (2) the desirability of an authoritative adjudication for guidance of public officials, and (3) the likelihood of recurrence of the same or a similar problem. *Id.* Two questions presented in Rath's appeal meet the aforementioned test and merit review.

First, Rath's appeal raises the issue of what a party alleging the illegal expenditure of public funds needs to show in order to establish irreparable harm. Obviously, the proof required to enjoin an illegal expenditure of public funds is of paramount importance to the taxpayers in this state. Moreover, this issue, if adjudicated, will provide needed guidance because it is an issue of first impression in this state. Furthermore, the issue is likely to recur because taxpayer suits seeking to enjoin alleged illegal expenditures of public funds are frequently filed. The public interest exception is applicable.

Second, Rath's appeal also raises the issue of the appropriate interpretation of an oft-used phrase in our statutes, "lowest responsible bidder," and its proper application within the context of Nebraska's competitive bidding statutes. Again, the public nature of this question is not in doubt. We have repeatedly held that competitive bidding statutes exist solely for the protection of the public, see *Anderson v. Peterson*, 221 Neb. 149, 375 N.W.2d 901 (1985), and Rath, as a taxpayer, instituted this action on the public's behalf.

In addition, an authoritative decision on this issue will provide guidance to every municipality and state official entrusted with procuring products and services. The term "lowest responsible bidder" is found in numerous statutory provisions, and to the extent we can bring clarity to its proper scope, interpretation, and interplay within the competitive bidding framework, tax-paying citizens of this state will benefit. See, e.g., Neb. Rev. Stat. §§ 13-1414, 14-361, 14-363, 14-365.08, 14-3,111, 14-1710, 14-2121, 15-228, 15-734, 15-753, 16-249, 16-649, 16-672.05, 17-533, 17-918, 18-507, 23-342, 23-366, 23-3615 (Reissue 1997); Neb. Rev. Stat. §§ 31-118, 31-120, 31-355, 31-512,

31-748, 31-912, 39-810, 39-1407, 39-1620, 46-145 (Reissue 1998); Neb. Rev. Stat. §§ 31-741, 39-1349, and 81-161 (Cum. Supp. 2002); Neb. Rev. Stat. §§ 72-803, 73-101.01, 73-103 (Reissue 1996); Neb. Rev. Stat. §§ 81-1108.55, 81-1201.13, 83-134, 83-916 (Reissue 1999).

Lastly, this issue is likely to recur because of the frequency of public contracting and the corresponding disputes over the fairness of those contracts. A short review of our case law shows that we have been faced with a number of cases challenging awards to the lowest responsible bidder. See, generally, *Day v. City of Beatrice*, 169 Neb. 858, 101 N.W.2d 481 (1960); *Philson v. City of Omaha*, 167 Neb. 360, 93 N.W.2d 13 (1958); *Niklaus v. Miller*, 159 Neb. 301, 66 N.W.2d 824 (1954); *Best v. City of Omaha*, 138 Neb. 325, 293 N.W. 116 (1940). However, we have not had the opportunity to properly determine the procedural framework of competitive bidding.

The appellees suggest that our analysis of the public interest exception should be controlled by *Stoetzel & Sons v. City of Hastings*, 265 Neb. 637, 658 N.W.2d 636 (2003); *Greater Omaha Realty Co. v. City of Omaha*, 258 Neb. 714, 605 N.W.2d 472 (2000); and *Putnam v. Fortenberry*, 256 Neb. 266, 589 N.W.2d 838 (1999), where we concluded that the public interest exception was inapplicable. By and large, the appellees are correct in asserting that, much like the aforementioned cases, the current posture of Rath's appeal is due to the relief sought and the procedural and strategic choices made along the way. However, this is not enough, by itself, to preclude review. For if, as the appellees suggest, Rath forfeited any chance of review under the public interest exception because of past strategic or procedural choices, a party advancing mootness would need only to point a court's attention to the mistake that caused the appeal to be moot and review would be precluded. Such a rule would nearly eviscerate the public interest exception.

Additionally, unlike the cases cited by the appellees, the issue facing this court is not unique to the factual situation of the parties. Instead of an inquiry into specific bidding proposals, contracts, or bequests, the overarching issues in this case are generic and statutorily based. In sum, this issue is susceptible to and proper for review under the public interest exception.

The final issue on appeal, whether Van Kirk's bid was responsive, does not meet the public interest exception. Much like *Stoetzel & Sons, supra*; *Greater Omaha Realty Co., supra*; and *Putnam, supra*, it entails a detailed examination into the specific factual circumstances of the case. Specifically, we would be required to examine the bid requirements, the authority retained by the City to waive informalities in the bidding process, and the specific bid submissions of the parties. Furthermore, paramount concern over this issue resides wholly with the parties, and no guidance is needed on an issue that, due to its unique facts, is unlikely to recur.

Thus, prior case law, including *Stoetzel & Sons, supra*; *Greater Omaha Realty Co., supra*; *Putnam, supra*; and *Koenig v. Southeast Community College*, 231 Neb. 923, 438 N.W.2d 791 (1989), compels a finding that Rath's appeal is moot. However, two of the aforementioned issues presented by Rath's appeal meet the public interest exception to the mootness doctrine and, although moot, merit review to provide guidance to public officials and future litigants in the competitive bidding arena.

### IRREPARABLE HARM

Rath's amended petition requested temporary and permanent injunctive relief to prevent the City from (1) awarding the project to Van Kirk and (2) spending any public funds on the project until it was awarded to the lowest responsible bidder. In its order, the district court quoted *Central Neb. Broadcasting v. Heartland Radio*, 251 Neb. 929, 931, 560 N.W.2d 770, 771-72 (1997), for the standard for granting an injunction.

> As an injunction is an extraordinary remedy, it ordinarily should not be granted except in a clear case where there is actual and substantial injury. . . . Stated otherwise, injunctive relief should not be granted unless the right is clear, the damage is irreparable, and the remedy at law is inadequate to prevent a failure of justice. . . . As an injunction is an extraordinary remedy, it is available in the absence of an adequate remedy at law and where there is a real and imminent danger of irreparable injury.

(Citations omitted.) Initially, the court determined that Rath "failed to produce any evidence of substantial or irreparable

injury" and denied his request for a temporary injunction. Nearly 8 months later, the court made the same determination and denied Rath's request for permanent injunctive relief. The court explained:

> The evidence to date is that money to pay off the debt on this project will come from rate payers. There was no additional evidence presented at final hearing as to whether the rates would increase or if so how much, by a $16,000.00 difference in bid price. The evidence could conceivably be that it will not increase rates due to certain economies of having a local contractor. There was no showing of irreparable injury to rate pay[e]rs or Mr. Rath as a taxpayer. The request for permanent injunction and other relief should therefore be denied.

On appeal, Rath argues the district court erred in holding that a taxpayer has to prove more than an illegal expenditure of public funds in order to establish irreparable injury. According to Rath, taxpayers have the right to enjoin the government's illegal expenditure of funds without any showing of individual financial loss. Rath relies exclusively on the following oft-cited rules of standing:

> " ' "[A] person seeking to restrain the act of a public board or officer must show special injury peculiar to himself or herself aside from and independent of the general injury to the public *unless it involves an illegal expenditure of public funds* or an increase in the burden of taxation." ' " . . .
>
> . . . A resident taxpayer, *without showing any interest or injury peculiar to itself,* may bring an action to enjoin the illegal expenditure of public funds raised for governmental purposes.

(Emphasis supplied.) *Chambers v. Lautenbaugh,* 263 Neb. 920, 928, 644 N.W.2d 540, 547-48 (2002). See, also, *Wasikowski v. Nebraska Quality Jobs Bd.,* 264 Neb. 403, 648 N.W.2d 756 (2002); *State ex rel. Steinke v. Lautenbaugh,* 263 Neb. 652, 642 N.W.2d 132 (2002); *Hagan v. Upper Republican NRD,* 261 Neb. 312, 622 N.W.2d 627 (2001); *Ritchhart v. Daub,* 256 Neb. 801, 594 N.W.2d 288 (1999); *Fitzke v. City of Hastings,* 255 Neb. 46, 582 N.W.2d 301 (1998); *Professional Firefighters of Omaha v. City of Omaha,* 243 Neb. 166, 498 N.W.2d 325 (1993); *Rexroad,*

*Inc. v. S.I.D. No. 66,* 222 Neb. 618, 386 N.W.2d 433 (1986); *Nebraska Sch. Dist. No. 148 v. Lincoln Airport Auth.,* 220 Neb. 504, 371 N.W.2d 258 (1985); *Haschke v. School Dist. of Humphrey,* 184 Neb. 298, 167 N.W.2d 79 (1969); *Martin v. City of Lincoln,* 155 Neb. 845, 53 N.W.2d 923 (1952). Essentially, Rath argues that his right to injunctive relief is established by proof that (1) he is a resident taxpayer and (2) taxpayer funds are being expended contrary to law.

The appellees agree that the rule quoted in *Chambers, supra,* gives Rath standing. However, the appellees argue that the district court's ruling was based on Rath's failure to meet the standard for granting a permanent injunction in *Central Neb. Broadcasting v. Heartland Radio,* 251 Neb. 929, 560 N.W.2d 770 (1997), and that Rath's *standing is not relevant to this determination.* According to the appellees, the aforementioned cases are confined to the issue of standing and are irrelevant to the propriety of granting an injunction. The appellees argue that in addition to satisfying the standing requirement, Rath had to make a separate showing of irreparable harm. On that account, the appellees argue that the court correctly found that Rath offered no evidence of irreparable harm and that therefore, Rath's petition was properly dismissed.

It is clear, and no one argues otherwise, that Rath has standing to maintain the action. See, *Wasikowski, supra; Chambers, supra.* Likewise, it is clear that taxpayers have an equitable interest in public funds and their proper application. See, *Niklaus v. Miller,* 159 Neb. 301, 303, 66 N.W.2d 824, 826 (1954) ("each taxpayer has such an individual and common interest in public funds as to entitle him to maintain an action to prevent their unauthorized appropriation"); *Rein v. Johnson,* 149 Neb. 67, 70, 30 N.W.2d 548, 552 (1947) ("resident taxpayers of the state have an equitable interest in the public funds of the state and in their proper application"). In fact, the public's interest in the proper appropriation of public funds is the main impetus behind the relaxation of standing requirements in this area. See, *Niklaus, supra; Rein, supra; Woodruff v. Welton,* 70 Neb. 665, 97 N.W. 1037 (1904). It is not clear, however, what a resident taxpayer alleging the illegal expenditure of public funds needs to show in order to establish irreparable harm.

We conclude that the injury that flows from an illegal expenditure of public funds is inherently irreparable. An injury is irreparable "when it is of such a character or nature that the party injured cannot be adequately compensated therefor in damages, or when the damages which may result therefrom cannot be measured by any certain pecuniary standard." *Central Neb. Broadcasting*, 251 Neb. at 933, 560 N.W.2d at 772, citing *Eidemiller Ice Co. v. Guthrie*, 42 Neb. 238, 60 N.W. 717 (1894). See, also, *World Realty Co. v. City of Omaha*, 113 Neb. 396, 404, 203 N.W. 574, 577 (1925) (" '[i]rreparable injury, as used in the law of injunction, does not necessarily mean that the injury is beyond the possibility of compensation in damages, nor that it must be very great . . .' ").

Obviously, plaintiff taxpayers have no problem determining the amount of money that was illegally expended. However, an eventual declaration of illegality does not void the obligations a municipal corporation has incurred for services expended on its behalf under the illegal contract. Thus, the taxpayer will not be made whole, i.e., the public coffer will not return to its original level. "Where a municipal corporation receives and retains substantial benefits under a contract which it was authorized to make, but which was unenforceable because irregularly executed, it is liable in an action brought to recover the reasonable value of the benefits received." *Gee v. City of Sutton*, 149 Neb. 603, 609, 31 N.W.2d 747, 751 (1948). In other words, if an action is "void not because of a lack of power but because of a failure to properly exercise existing power[,] the organization is bound to the extent that it has received the benefits of the action." *Fulk v. School District*, 155 Neb. 630, 643, 53 N.W.2d 56, 63 (1952). See, also, *Lanphier v. OPPD*, 227 Neb. 241, 417 N.W.2d 17 (1987).

For example, if a city acts within its power to enter into a contract for a construction project, as soon as a contractor expends efforts on behalf of the city, the contractor becomes entitled to compensation for those efforts, even if the contract is eventually declared null and void for failure to follow the applicable bidding statutes. This leaves the taxpayer with unavoidable and unrecoverable obligations and establishes the existence of irreparable harm.

Moreover, the district court's ruling suggests that before taxpayers are able to obtain an injunction to prevent an illegal expenditure of public funds, they have to quantify the amount the expenditure will increase their rates or taxes. Yet, even if we assume a taxpayer action gives rise to a private claim for damages, it would be nearly impossible for an aggrieved taxpayer to quantify his or her pro rata share of damages. For example, an illegal expenditure of $500 would have almost no budgetary or tax consequences for a city with a multimillion-dollar budget. In fact, while it may be easy to determine the amount of the illegal expenditure, the true fiscal impact of the expenditure will often be indeterminable because of the myriad of fiscal and political choices that follow an expenditure of public funds.

Finally, if an absence of irreparable harm (beyond the illegality of the expenditure itself) prevents a court from deciding if an illegal expenditure of public funds has occurred, following the law becomes irrelevant to those entrusted to uphold it. This cannot be the case. If the inscription on the State Capitol Building is true and "[t]he salvation of the state is watchfulness in the citizen" (inscribed by Hartley Burr Alexander), legitimate taxpayer suits should not be unduly hindered and empty formalism should not prevent a determination on the merits.

In sum, we hold that a taxpayer seeking to enjoin an alleged illegal expenditure of public funds needs to prove only that the funds are being spent contrarily to law in order to establish an irreparable injury. Stated otherwise, irreparable harm should be assumed whenever a plaintiff proves an expenditure of public funds is contrary to law. See, *White v. Davis*, 30 Cal. 4th 528, 556, 68 P.3d 74, 93, 133 Cal. Rptr. 2d 648, 671 (2003) ("a taxpayer's general interest in not having public funds spent unlawfully" is "sufficient to afford standing to bring a taxpayer's action . . . and to obtain a permanent injunction after a full adjudication on the merits"); *Kendall Appraisal Dist. v. Cordillera Ranch, Ltd.*, No. 04-03-00150-CV, 2003 WL 21696901 at *2 n.2 (Tex. App. July 23, 2003) (standing is "conferred on the taxpayer, despite the absence of a distinct injury, precisely because imminent and irreparable harm will likely befall the taxpayer in the absence of equitable intervention").

## LOWEST RESPONSIBLE BIDDER

Rath's second assignment of error asserts that the City was required to award the contract to Westhoff because it was the lowest responsible bidder. Even though this assignment is moot with respect to the present parties, we review this issue under the public interest exception for guidance to public officials and future litigants. Section 18-507 governs contracting for the construction of improvements to the wastewater treatment facilities for all cities and villages in Nebraska. Among other things, § 18-507 requires that the "lowest responsible bidder" be awarded the contract.

> Upon approval of such plans, the governing body shall thereupon advertise for sealed bids for the construction of said improvements once a week for three weeks in a legal paper published in or of general circulation within said municipality, and the contract *shall be awarded to the lowest responsible bidder*.

(Emphasis supplied.) *Id.* Cities of the second class, such as Sutton, are also required to follow Neb. Rev. Stat. § 17-913 et seq. (Reissue 1997) when contracting for the construction of sewerage systems, including wastewater treatment facilities. These provisions also require that the contract be granted to the "lowest responsible bidder." See § 17-918.

On a number of occasions, we have discussed the policy behind competitive bidding. We have said:

> [C]ompetitive bidding, after public advertising, is a fundamental, time-honored procedure that assures the prudent expenditure of public money. . . . Competitive bid statutes exist to invite competition, to guard against favoritism, improvidence, extravagance, fraud, and corruption, and to secure the best work or supplies at the lowest possible price. Such statutes are enacted for the benefit of taxpayers.

(Citation omitted.) *Anderson v. Peterson,* 221 Neb. 149, 153, 375 N.W.2d 901, 904 (1985). By mandating that contracts be awarded to the lowest responsible bidder, the Nebraska Legislature is seeking to protect taxpayers, prevent favoritism and fraud, and increase competition in bidding by placing bidders on equal footing. See, generally, *Philson v. City of Omaha,* 167 Neb. 360, 93 N.W.2d 13 (1958); *Fairbanks, Morse & Co. v. City of North Bend,* 68 Neb. 560, 94 N.W. 537 (1903); *State, ex rel. Whedon, v. York*

*County,* 13 Neb. 57, 12 N.W. 816 (1882); *Merrick County v. Batty,* 10 Neb. 176, 4 N.W. 959 (1880).

At its heart, this dispute is about the role public officials should play in the awarding of contracts. A review of our cases makes it clear that public officials are granted discretion under the competitive bidding statutes. The real question, however, is determining when, if at all, their freedom of action is curtailed. As noted elsewhere, it is a delicate balancing act:

> These provisions should not be so strictly construed as to reduce the authorities to mere ministerial agents, since this would often defeat the purpose for which they are designed, by allowing unscrupulous contractors to defraud the city. On the other hand, if the authorities are vested with too broad discretionary powers, the way for fraudulent practices is again left open.

10 Eugene McQuillin, The Law of Municipal Corporations § 29.72 at 482 (3d ed. 1999).

Determining the lowest responsible bidder is a two-step process. The first step is for the public body to determine which bidders are responsible to perform the contract. Responsibility, however, is not merely a synonym for a bidder's pecuniary ability. Rather, responsibility also pertains to a bidder's

> ability and capacity to carry on the work, his equipment and facilities, his promptness, and the quality of work previously done by him, his suitability to the particular task, and such other qualities as are found necessary to consider in order to determine whether or not, if awarded the contract, he could perform it strictly in accordance with its terms.

*State, ex rel. Nebraska B. & I. Co., v. Board of Commissioners,* 105 Neb. 570, 572-73, 181 N.W. 530, 532 (1921). See, also, *Day v. City of Beatrice,* 169 Neb. 858, 101 N.W.2d 481 (1960); *Best v. City of Omaha,* 138 Neb. 325, 293 N.W. 116 (1940).

Because many of the aforementioned qualities and characteristics are subjective in nature, we have recognized that public officials "do not act ministerially only, but exercise an official discretion" when "passing upon the question of the responsibility of bidders." See *State, ex rel. Nebraska B. & I. Co.,* 105 Neb. at 573, 181 N.W. at 532. See, also, *Best, supra;* 64 Am. Jur. 2d *Public Works and Contracts* § 69 at 704 (2001) ("public bodies

have discretion to determine that bidders are responsible"). Only bidders that are deemed responsible are proper for further consideration and ultimate approval.

The second step in determining the lowest responsible bidder focuses on which of the responsible bidders has submitted the lowest bid. The lowest total price is not always dispositive of this question because public bodies retain an official discretion to determine which bid offers the best value to their constituents. See *Best*, 138 Neb. at 328, 293 N.W. at 118 ("[p]ublic administrative bodies possess a discretionary power in awarding contracts . . . and in determining questions of public advantage and welfare"). Stated otherwise, the public body has discretion to award the contract to one other than the lowest of the responsible bidders whenever a submitted bid contains a relevant advantage. See, *Day, supra*; *Niklaus v. Miller*, 159 Neb. 301, 66 N.W.2d 824 (1954); *Best, supra*. For example, a bid that promises an early completion date or construction with higher quality materials could justify a public body's award of a construction contract to one other than the lowest of the responsible bidders. See, *Niklaus, supra* (earlier completion date justified city council's decision to award construction contract to higher cost bidder); *Best, supra* (noting importance of completion dates); *Worth James Const. v. Jacksonville Water Com'n*, 267 Ark. 214, 590 S.W.2d 256 (1979) (better quality pipe justified award of construction contract to higher cost bidder). Cf., *State v. City of Lincoln*, 68 Neb. 597, 94 N.W. 719 (1903) (difference in quality of coal justified award of contract to one other than lowest bidder); *Austin v. Housing Authority*, 143 Conn. 338, 122 A.2d 399 (1956) (difference in bids for insurance coverage justified award of contract to higher cost bidder).

Recognizing that public bodies exercise an official discretion when awarding bids, we have stated that courts will show deference when reviewing challenges to a public body's responsibility determinations and award decisions.

> Where there is a showing that the administrative body, in exercising its judgment, acts from honest convictions, based upon facts, and as it believes for the best interests of its municipality, and where there is no showing that the body acts arbitrarily, or from favoritism, ill will, fraud, collusion, or other such motives, it is not the province of a court to

interfere and substitute its judgment for that of the administrative body.
*Best v. City of Omaha*, 138 Neb. 325, 328, 293 N.W. 116, 118 (1940). In other words, whenever a public body has discretion to make a decision during the bidding process, a court is essentially limited to reviewing that decision for bad faith. See, *Day v. City of Beatrice*, 169 Neb. 858, 101 N.W.2d 481 (1960); *Best, supra*; *State, ex rel. Nebraska B. & I. Co., v. Board of Commissioners*, 105 Neb. 570, 181 N.W. 530 (1921).

The appellees argue that this case falls under the analysis of *Best, supra*, and *Day, supra*, and that the City Council's decision should be reviewed deferentially. Rath, on the other hand, argues that public bodies have no discretion when two responsible bidders submit identical bids except for price. In such cases, Rath argues, the public body can only award the project to the lowest of the responsible bidders.

Rath is correct. In *Day, supra*, we reaffirmed the validity of *State v. Cornell*, 52 Neb. 25, 71 N.W. 961 (1897), where we held that when the only difference in bids is price, no discretion exists on the part of a public body in awarding the contract; the responsible bidder with the lowest bid must be awarded the contract. In essence, if the bids for the improvements to the wastewater treatment facility are identical, they become bids to sell the same commodity. Thus, the actual value/cost of the bids can be objectively compared, and the public body has no discretion to award the bid to anyone other than the lowest of the responsible bidders. Cf., *Austin, supra*; *Otter Tail Power Co. v. Village of Elbow Lake*, 234 Minn. 419, 49 N.W.2d 197 (1951).

The policy behind this rule is simple: If responsible bidders submit identical bids—except on price—the public body is without a valid reason to award the project to anyone other than the lowest of the responsible bidders. Stated otherwise, if all factors are equal except price, only price should be considered. While courts should normally ignore mere assertions of favoritism and waste, absent evidence to the contrary, questions abound when public officials choose the costlier of two identical bids from responsible contractors. This is aptly demonstrated in the instant case when concerns were expressed that Van Kirk was awarded the bid only because it may have been a local, favored business.

█ With reference to the facts in the present appeal, the district court, in its order, stated that both Westhoff and Van Kirk were deemed responsible bidders by the City Council. However, our review of the record shows that the City Council failed to make this determination. This failure would usually be fatal to the award, as a court cannot make an independent determination of responsibility. See *State, ex rel. Nebraska B. & I. Co., v. Board of Commissioners*, 105 Neb. 570, 181 N.W. 530 (1921). Determining the responsibility of bidders is a job for elected officials, and a court's only role is to review those decisions to make sure the public officials "did not act arbitrarily, or from favoritism, ill will, or fraud." *Id.* at 573, 181 N.W. at 532.

However, because review under the public interest exception to the doctrine of mootness is designed to provide guidance to public officials and future litigants, we must assume that Westhoff and Van Kirk were deemed responsible bidders. The next determination to be properly made is whether the City Council had discretion to award the bid to someone other than the lowest of the responsible bidders, i.e., it must be determined if the bids contained relevant differences. The appellees argue that the City Council highlighted the relevant differences in the bids. Specifically, they argue that Van Kirk's bid was superior because (1) Van Kirk is a local contractor and, therefore, familiar with the varied soil types in the area; (2) Van Kirk is a local contractor that would be immediately available for future repairs and maintenance; and (3) Van Kirk has past experience working with the project engineer.

Initially, even if we were to assume that some of these alleged advantages would favor one contractor over another in either of the bidding stages, there was no evidence before the City Council to support the first two claims. Moreover, all of the alleged advantages rest on factors outside of the bid and the bidding specifications. Therefore, while some of these factors might have been relevant to determine the bidders' responsibility, they are irrelevant when determining the similarity of the bids. If the City were truly concerned about a contractor's familiarity with the soil types in the geographical area, it could have included appropriate requirements in the invitation to bid or the bidding instructions. Furthermore, future maintenance or

repairs to the treatment facility is wholly separate from the proposed improvements, and the record contains no contractual provision preventing the City from using any contractor, including local contractors, for future repairs. Lastly, to the extent experience with the project engineer is relevant, the evidence illustrates that Westhoff had worked with the project engineer at least 11 times previously.

Our review of the bids shows that they were identical in every respect but price. The bids, per the project engineer's instructions, contain the exact same specifications and dates of completion. Because the bids were identical except for price, the City Council would have had no discretion to award the contract to anyone other than Westhoff, the lowest of the responsible bidders.

Lastly, Van Kirk argues the City retained the discretion to award the bid to one other than the lowest responsible bidder because the invitation to bid purported to give the City the right to accept whatever bid was in the best interests of the City in its sole discretion. This argument is without merit. A party cannot, by contractual agreement with another party, obtain the power to do something that state law forbids. See *Moore v. Eggers Consulting Co.*, 252 Neb. 396, 406, 562 N.W.2d 534, 542 (1997) ("[i]f an act is prohibited by statute, an agreement in violation of the statute is void").

In sum, a public body has broad discretion in the awarding of public contracts. Initially, that discretion allows a public body to determine whether a bidder is responsible. It also allows a public body to look beyond a bid's stated price to determine the true value of the bid. Stated otherwise, a public body has the authority to determine which of the responsible bidders has submitted the bid that offers the best value to its constituents. However, when responsible bidders submit identical bids, the public body's freedom of action is curtailed and it must award the contract to the lowest of the responsible bidders. Contracts let in contravention of this rule, i.e., in contravention of §§ 17-918 and 18-507, are illegal and can be enjoined.

## CONCLUSION

For the foregoing reasons, we conclude that a resident taxpayer seeking to enjoin an illegal expenditure of public funds

establishes the requisite irreparable harm by proving that the funds are being spent contrarily to law. In addition, we determine that a public body has no discretion to award a bid to any entity other than the lowest bidder when two or more responsible bidders *submit identical bids* except for price. However, because we have concluded that the instant appeal is moot and that the above-stated determinations are made based on the public interest exception to the mootness doctrine, we dismiss the present appeal.

APPEAL DISMISSED.

HENDRY, C.J., and WRIGHT, J., not participating.