MARION SLUSARSKI AND CONRAD SLUSARSKI, APPELLANTS, V.
COUNTY OF PLATTE, NEBRASKA, AND COUNTY OF MERRICK,
NEBRASKA, APPELLEES.

416 N.W.2d 213

Filed November 25, 1987.   No. 86-017.

Raymond E. Baker of Law Offices of Raymond E. Baker, P.C., for appellants.

William T. Wright of Jacobsen, Orr, Nelson & Wright, P.C., for appellee County of Merrick, and Daniel D. Jewell of Jewell, Gatz & Collins, for appellee County of Platte.

BOSLAUGH, WHITE, CAPORALE, SHANAHAN, and GRANT, JJ., and BRODKEY, J., Retired, and COLWELL, D.J., Retired.

CAPORALE, J.

Plaintiffs-appellants, Marion Slusarski and Conrad Slusarski, challenge the dismissal of their petition following the

sustainment of the separate demurrers of defendants-appellees, the Counties of Merrick and Platte. We reverse and remand for further proceedings.

The operative second amended petition asserts that Merrick and Platte Counties are "bodies politic," declares compliance with the relevant provisions of the Political Subdivisions Tort Claims Act, Neb. Rev. Stat. §§ 23-2401 et seq. (Reissue 1983), as a condition precedent to bringing suit, and alleges that the Slusarskis are the lessees of a certain section of land in Merrick County which they farm and on which they had planted and cultivated certain crops. The petition further avers that the counties "jointly own and are responsible for a public road" abutting the east edge of the Slusarski leasehold, which road "acted as a dike" and prevented the flow of waters resulting from "rains, springs, or melting snows" across the leasehold, thereby flooding and damaging the Slusarskis' crops. Additionally, the petition states the aforesaid waters were not part of a watercourse or lake, and charges that but for the road said waters were "wont to flow in an easterly direction" across the Slusarski leasehold. The petition alleges the conduct of the two counties was "intentional," "unnecessary," and "unreasonable."

The counties take the position that the Slusarskis' operative petition fails to state a cause of action. In resolving this appeal we are bound by the rule that pleadings are to be liberally construed, and if so construed a petition states a cause of action, a demurrer thereto is to be overruled. See *Waite v. Samson Dev. Co.*, 217 Neb. 403, 348 N.W.2d 883 (1984). Moreover, a demurrer which challenges the sufficiency of the allegations is a general one, *Stewart v. McCauley*, 178 Neb. 412, 133 N.W.2d 921 (1965), in ruling on which a court is required to accept as true all the facts which are well pled and the proper and reasonable inferences of law and fact which may be drawn therefrom, but not the conclusions of the pleader. See, *Ambroz v. Cornhusker Square Ltd., post* p. 899, 416 N.W.2d 510 (1987); *Bard v. Cox Cable of Omaha, Inc., ante* p. 880, 416 N.W.2d 4 (1987); *Standard Federal Savings & Loan Assn. v. Meins, ante* p. 853, 415 N.W.2d 462 (1987); *Knoell v. Huff,* 224 Neb. 90, 395 N.W.2d 749 (1986).

In *Nichol v. Yocum*, 173 Neb. 298, 113 N.W.2d 195 (1962), this court determined, on appeal following a trial on the merits, that an upper proprietor was entitled to a mandatory injunction compelling the lower proprietor to remove the earthen embankment the latter had erected along a boundary of his land, where waters collected and concentrated in volume and "flowed in a state of nature" through a depression or drainageway. *Id*. at 309, 113 N.W.2d at 201. In so holding, this court determined that the waters in question were not diffused surface waters and announced that

> diffused surface waters may be dammed, diverted, or otherwise repelled, if necessary, and in the absence of negligence. But when diffused surface waters are concentrated in volume and velocity and flow into a natural depression, draw, swale, or other drainway, the rule as to diffused surface waters does not apply. The proper rule in such cases is generally stated in 56 Am. Jur., Waters, § 75, p. 562, as follows: "The great weight of authority, however, is to the effect that both under the civil-law rule as to surface waters and under the so-called 'common-law' or 'common enemy' rule, a natural drainway must be kept open to carry the water into the streams, and as against the rights of the upper proprietor, the lower proprietor cannot obstruct surface water when it has found its way to and is running in a natural drainage channel or depression. Thus, it has been held that it is the duty of a lower landowner who builds a structure across a natural drainway to provide for the natural passage through such obstruction of all the water which may be reasonably anticipated to drain therein, and that this is a continuing duty."

*Id*. at 306, 113 N.W.2d at 200.

In *Belsky v. County of Dodge*, 220 Neb. 76, 369 N.W.2d 46 (1985), the landowners claimed that a bridge built by the county obstructed the drainage of waters which collected on their lands, and sought to enjoin continuation of the obstruction and to have the former drainageway restored. In affirming the dismissal of the landowners' action after a trial on the merits, this court noted that the landowners had the burden of proving

that a drainageway existed before the county made its alteration, that the drainageway was formed and existed in a state of nature, and that the drainageway carried water from a higher to a lower estate. We concluded that since the landowners failed to prove the drainageway was a natural one, they had failed to meet their burden of proof.

More recently, in *Johnson v. NM Farms Bartlett, ante* p. 680, 414 N.W.2d 256 (1987), we said that the alteration of a natural drainageway for diffused surface waters is acceptable where the interests of good husbandry are served, circumstances are such that alteration is necessary, and the particular alteration is reasonable under all the circumstances presented. Accord *Bohaty v. Briard*, 219 Neb. 42, 361 N.W.2d 502 (1985). See, also, *Nickman v. Kirschner*, 202 Neb. 78, 273 N.W.2d 675 (1979); *Arthur v. Glover*, 82 Neb. 528, 118 N.W. 111 (1908).

The petition before us alleges the waters in question, but for the road, were "wont to flow in an easterly direction." The inference to be drawn from the words "wont to flow," giving them the liberal construction required, is that there existed a natural drainageway, that is, one occurring in a state of nature.

The petition informs us the waters in question arose from rains, springs, or melting snows; they thus began as diffused surface waters. *Sullivan v. Hoffman*, 207 Neb. 166, 296 N.W.2d 707 (1980). Whether they retained their character as such is unknown, for the petition does not state whether at some point the waters collected and concentrated in volume and velocity. However that may be, the petition nonetheless states a cause of action in tort. If the waters retained their character as diffused surface waters, the counties were free, as lower proprietors, to dam them, provided the interests of good husbandry were served thereby, it was necessary to do so, and it was reasonable under all the circumstances presented. But the petition asserts the damming was not necessary and was done unreasonably. If the waters collected and concentrated in volume and velocity, they lost their character as diffused surface waters, and the counties were not privileged to obstruct their flow through the natural drainageway.

Moreover, the petition states a second cause of action. It

must be inferred from the facts alleged that the counties own and maintain the road for a public use. The plaintiffs in *Parriott v. Drainage Dist. No. 6, ante* p. 123, 410 N.W.2d 97 (1987), brought an action seeking damages as the result of flooding caused by the defendant drainage district's alleged negligence in failing to maintain a ditch in proper repair. In reversing the dismissal of the action following the sustainment of the defendant district's demurrer, we held that notwithstanding the fact that plaintiffs had failed to state a tort action in negligence against the district because they had failed to allege compliance with the Political Subdivisions Tort Claims Act, they had nonetheless stated an action for compensation under the provisions of the Nebraska Constitution. We observed that when a political subdivision with the power of eminent domain damages property for a public use, the property owner may seek damages in an action for tort, in an action for inverse condemnation under the provisions of Neb. Rev. Stat. §§ 76-701 to 76-725 (Reissue 1986), or in an action under the language of Neb. Const. art. I, § 21, which provides, inter alia, that the property of no person shall be damaged for a public use without just compensation. We further said that as article I, § 21, is self-executory, a petition alleging that one's property was damaged for a public use is sufficient as against a general demurrer, notwithstanding the fact that the petition refers neither to the foregoing article and section numbers nor the pertinent constitutional language. Accord, *Kula v. Prososki*, 219 Neb. 626, 365 N.W.2d 441 (1985); *City of Omaha v. Matthews*, 197 Neb. 323, 248 N.W.2d 761 (1977).

The judgment of the district court dismissing the petition is reversed and the cause remanded for further proceedings.

REVERSED AND REMANDED FOR
FURTHER PROCEEDINGS.