Bernard J. Kobza and Vickey L. Kobza, husband and wife, appellants and cross-appellees, v. Rhonda Y. Bowers and Melvin L. Bowers, Jr., wife and husband, appellees and cross-appellants.

___ N.W.2d ___

Filed August 11, 2015.    No. A-14-670.

1. **Injunction: Equity.** An action for injunction sounds in equity.
2. **Equity: Appeal and Error.** In an appeal of an action in equity, an appellate court tries the factual issues raised by the appellant's assignments of error de novo on the record and reaches its conclusions independent of the findings of the trial court; however, where credible evidence is in conflict on material issues of fact, an appellate court may consider and give weight to the fact that the trial judge heard and observed the witnesses and accepted one version of the facts rather than another.
3. **Waters: Injunction.** Injunctive relief may be granted to an adjoining landowner upon a proper showing that an obstruction in a drainageway or natural watercourse constitutes a continuing and permanent injury to that landowner.
4. **Injunction: Proof: Appeal and Error.** A party seeking an injunction must establish by a preponderance of the evidence every controverted fact necessary to entitle him or her to relief.
5. **Waters: Words and Phrases.** Diffused surface water is defined as water which appears upon the surface of the ground in a diffused state, with no permanent source of supply or regular course, which ordinarily results from rainfall or melting snow.
6. ____: ____. When diffused surface waters are channeled into a well-defined natural course, whether the course be ditch, swale, or draw in its primitive condition, a natural drainageway is formed.
7. ____: ____. Ground water is defined as that water which occurs or moves, seeps, filters, or percolates through the ground under the surface of the land.

8. **Waters.** Diffused surface waters may be dammed, diverted, or otherwise repelled, if necessary, and in the absence of negligence.

9. ____. When diffused surface waters are concentrated in volume and velocity into a natural depression, draw, swale, or other drainageway, the rule as to diffused surface waters does not apply.

10. ____. A natural drainageway must be kept open to carry the water into the streams, and a lower proprietor cannot obstruct surface water when it has found its way to and is running in a natural drainage channel or depression.

11. ____. A lower landowner who builds a structure across a natural drainageway has a continuing duty to provide for the natural passage through such obstruction of all the waters which may be reasonably anticipated to drain therein.

12. ____. Lower lands are under a natural servitude to receive the surface water of higher lands flowing along accustomed and natural drainageways.

13. ____. A lower estate is not under a natural servitude to receive diffused surface waters which have not found their way into a natural drainageway.

14. ____. It is essential that one seeking to prohibit a diversion of the flow of surface water show some damage or injury resulting from it.

15. **Appeal and Error.** An appellate court is not obligated to engage in an analysis that is not necessary to adjudicate the case and controversy before it.

16. **Injunction.** An injunction is an extraordinary remedy and ordinarily should not be granted except in a clear case where there is actual and substantial injury.

17. ____. Injunctive relief should not be granted unless the right is clear, the damage is irreparable, and the remedy at law is inadequate to prevent a failure of justice.

18. ____. As an injunction is an extraordinary remedy, it is available in the absence of an adequate remedy at law and where there is a real and imminent danger of irreparable injury.

19. **Injunction: Damages: Words and Phrases.** An injury is irreparable when it is of such a character or nature that the party injured cannot be adequately compensated therefor in damages, or when the damages which may result therefrom cannot be measured by any certain pecuniary standard.

20. **Costs.** A prevailing plaintiff in actions for the recovery of money only or for the recovery of specific real or personal property shall be allowed costs.

Appeal from the District Court for Sarpy County: DAVID K. ARTERBURN, Judge. Affirmed.

Paul F. Peters for appellants.

Brian J. Muench for appellees.

IRWIN, INBODY, and RIEDMANN, Judges.

RIEDMANN, Judge.

## I. INTRODUCTION

Bernard J. Kobza and Vickey L. Kobza, husband and wife, appeal, and Rhonda Y. Bowers and Melvin L. Bowers, Jr., wife and husband, cross-appeal, from the order of the district court for Sarpy County which denied the Kobzas' request for a permanent injunction and denied the Bowerses' counterclaim for money damages and an injunction. We find no merit to the arguments on appeal or cross-appeal and therefore affirm.

## II. BACKGROUND

The Kobzas commenced this action seeking injunctive relief relating to the pooling of water on their property. In their counterclaim, the Bowerses also sought an injunction against the Kobzas as well as damages for the loss of trees on their property.

The Kobzas and the Bowerses own adjacent residential lots in Sarpy County, Nebraska. The Kobza property lies immediately south of the Bowers property. There are two drainageways that pass through the properties. The primary issue in this case involves what shall be referred to as "the western drainageway." This drainage path runs along the western border of both properties and flows into a pond several lots north of the Bowers property. The second drainageway runs through the eastern portion of the Kobza property onto the Bowers property, then turns westerly near the southern edge of the Bowers property until it joins with the western drainageway.

The Kobzas allege that the Bowerses unlawfully built an earthen berm which obstructs the flow of water in the western drainageway, causing water to back up onto the northwest corner of the Kobza property. They also allege that the Bowerses altered the natural course of the eastern drainageway by adding dirt fill, which moved the drainageway closer to the Kobza property line, endangering their property due to flooding in the event of a major rainfall. In their counterclaim, the Bowerses assert that the Kobzas unlawfully increased the flow of water by pumping ground water resulting in damage to the Bowers property. Thus, the Bowerses claim that the Kobzas should be enjoined from pumping water onto their property and be ordered to pay damages for the loss of the Bowerses' trees.

The Kobza residence was built in 1990. The Bowers residence was built in 1998 or 1999. After building their residence, the Kobzas started getting water in their basement. To alleviate the problem, they installed a sump pump and, several years later, an underground dewatering well. These structures are activated by underground probes and pump water at a rate of 30 to 40 gallons per minute through an underground pipe. Initially, the outflow pipe was connected to another piece of pipe running underneath the Bowers property, with the Bowerses' permission, and the water emptied into a culvert under the Bowerses' driveway where it continued to flow north from there. In 2008, however, the piping system failed on two occasions. After that, the Kobzas refused to repair the pipes and began discharging water at the property line. This resulted in water accumulating on the southwest corner of the Bowers property.

There were no issues with the ponding of water on either property while the piping system was in place. Bernard Kobza conceded at trial that if he had allowed the original piping system to be repaired and reattached, it would have disposed of all of the water coming from his sump pump and dewatering well. But he was unwilling to trust someone else with control over potential flooding on his property,

because he blamed the Bowerses for the previous breaks in the system.

In order to alleviate the flooding which was occurring on their property after the piping system was no longer operational, the Bowerses obtained a permit from Sarpy County and installed a second culvert in 2009. They also built an earthen berm extending from the point where the dewatering well discharges water to a point near the road at the west. They installed a pipe at the western end of the berm through the berm in order to facilitate the drainage of water from the Kobza property, through the berm, and into the culvert. The berm alleviated the flooding on the Bowers property, but water began backing up and pooling in the northwest corner of the Kobza property. The Kobzas discontinued use of their dewatering well in November 2010, however, and there has been no flooding on their property since then. The area has recovered with grass growing, and as the district court observed, it now has "a generally positive appearance."

Paul Woodward, a civil engineer, testified for the Kobzas at trial. He opined that the Bowerses' berm obstructs the flow of water, causing it to pond onto the Kobza property. He also testified that the present location of the eastern drainageway is different from its historic location. He could not say with certainty how the location of the drainage path had changed but believed it could be attributed to fill activities both at the time the Bowerses' residence was built and later within their backyard. According to Woodward, the eastern drainageway is also now more narrow and shallow than it used to be, which means there is less area for water to flow. He opined that in the event of a large rainfall, the result of these changes could be that excess water could drain back onto the Kobza property.

After trial, the district court entered an order denying the Kobzas' request for injunctive relief. The court found that the ponding issues on both parties' properties correlate with the elimination of ground water from the Kobzas' dewatering system, as opposed to accumulation from rainfall or snowmelt

alone. The court noted that the Kobzas cite to no case law which allows a landowner of an upper parcel to indiscriminately discharge ground water onto a lower parcel. The district court concluded that the Bowerses' action in building the berm provided adequately for the drainage of water and was therefore permissible. Similarly, the district court found that the Bowerses' actions with respect to the eastern drainageway provided for the natural passage of water, and there was no evidence to demonstrate that anything more than a de minimis injury would occur in the event of heavy rainfall. The district court also denied the Bowerses' counterclaim for damages for the loss of their trees and an injunction prohibiting the Kobzas from discharging water from their dewatering well. The Bowerses' request for attorney fees and court costs was also denied.

The Kobzas filed a motion for leave to file a fourth amended complaint after all evidence had been presented at trial but before written closing arguments had been submitted. The motion was denied. The Bowerses then moved for new trial, which was also denied. The Kobzas have now filed a timely appeal, and the Bowerses cross-appeal.

### III. ASSIGNMENTS OF ERROR

The Kobzas' nine assignments of error on appeal may be summarized as asserting that the district court erred in finding that they are not entitled to injunctive relief and refusing to allow them to amend their complaint after all evidence had been presented.

On cross-appeal, the Bowerses assign that the district court erred in (1) failing to award damages for the loss of their trees, (2) failing to enjoin the Kobzas from pumping ground water, and (3) failing to award costs.

### IV. STANDARD OF REVIEW

[1,2] An action for injunction sounds in equity. *Conley v. Brazer*, 278 Neb. 508, 772 N.W.2d 545 (2009). In an appeal of an action in equity, an appellate court tries the factual

issues raised by the appellant's assignments of error de novo on the record and reaches its conclusions independent of the findings of the trial court; however, where credible evidence is in conflict on material issues of fact, an appellate court may consider and give weight to the fact that the trial judge heard and observed the witnesses and accepted one version of the facts rather than another. *Romshek v. Osantowski*, 237 Neb. 426, 466 N.W.2d 482 (1991).

## V. ANALYSIS

### 1. APPEAL

The Kobzas assert that the district court erred in finding that they failed to meet their burden of proof and are therefore not entitled to injunctive relief. For the reasons explained below, we disagree.

[3,4] Injunctive relief may be granted to an adjoining landowner upon a proper showing that an obstruction in a drainageway or natural watercourse constitutes a continuing and permanent injury to that landowner. *Romshek, supra*. Under a de novo review, we are guided by the rule that a party seeking an injunction must establish by a preponderance of the evidence every controverted fact necessary to entitle him or her to relief. See *id*.

### (a) Western Drainageway

With respect to the western drainageway, the Kobzas claim that the Bowerses' berm constitutes an unlawful obstruction of a natural drainageway causing damage to their property and, therefore, must be enjoined. We conclude that the Kobzas are not entitled to an injunction, because the injury to their property was caused by the increased volume of ground water they pumped from their dewatering well, and the Bowerses' diversion of such ground water was not negligent.

[5,6] Diffused surface water is defined as water which appears upon the surface of the ground in a diffused state, with no permanent source of supply or regular course, which

ordinarily results from rainfall or melting snow. *Id*. When diffused surface waters are channeled into a well-defined natural course, whether the course be ditch, swale, or draw in its primitive condition, a natural drainageway is formed. *Id*.

[7] In contrast, ground water is defined as that water which occurs or moves, seeps, filters, or percolates through the ground under the surface of the land. *Spear T Ranch v. Knaub*, 269 Neb. 177, 691 N.W.2d 116 (2005); Neb. Rev. Stat. § 46-635 (Reissue 2010).

[8-11] The current Nebraska rule regarding diffused surface water was announced in *Nichol v. Yocum*, 173 Neb. 298, 113 N.W.2d 195 (1962). The court in *Nichol* held that diffused surface waters may be dammed, diverted, or otherwise repelled, if necessary, and in the absence of negligence. *Id*. But when diffused surface waters are concentrated in volume and velocity into a natural depression, draw, swale, or other drainageway, the rule as to diffused surface waters does not apply. *Id*. A natural drainageway must be kept open to carry the water into the streams, and a lower proprietor cannot obstruct surface water when it has found its way to and is running in a natural drainage channel or depression. *Id*. Thus, a lower landowner who builds a structure across a natural drainageway has a continuing duty to provide for the natural passage through such obstruction of all the waters which may be reasonably anticipated to drain therein. *Id*.

In the present case, the water flowing from the Kobza property to the Bowers property was composed of both surface water in a natural drainageway and ground water. However, the water which was pooling on the Kobza property causing damage to the northwest corner was the result of ground water that was pumped from the Kobzas' sump pump and dewatering well. It is undisputed that water stopped ponding on both parties' properties in 2010 after the Kobzas discontinued use of their dewatering well, and thus, there was no evidence that surface water alone was causing any problems. Accordingly, the rule from *Nichol*, which would prohibit the Bowerses from

obstructing the flow of water in a natural drainageway, does not apply.

[12,13] The rule announced in *Nichol* was concerned with obstruction of naturally occurring water flowing in a natural drainageway. This means that a landowner is prohibited from impeding the flow of water as nature intended. In the instant case, however, the Kobzas' dewatering well altered the natural flow of water by increasing its volume so that the water flowing through the piping system inundated the Bowerses' property in an unnatural amount. In finding that the plaintiffs in *Romshek v. Osantowski*, 237 Neb. 426, 466 N.W.2d 482 (1991), were not negligent in the manner in which they drained water from their field, the Supreme Court noted that the water from the plaintiffs' field was not forced upon the defendants' land in great volume, but, rather, it flowed at a natural pace. Further, as explained in *Nichol, supra*, the common law recognized that lower lands are under a natural servitude to receive the surface water of higher lands flowing along accustomed and natural drainageways. A lower estate is not, however, under a natural servitude to receive diffused surface waters which have not found their way into a natural drainageway. *Nu-Dwarf Farms v. Stratbucker Farms*, 238 Neb. 395, 470 N.W.2d 772 (1991). The Kobzas point to no case law supporting their position that the Bowerses must accept the ground water that the Kobzas are diverting on their land.

In essence, diffused surface waters are treated as a common enemy, and we see no reason to treat ground water differently. See *id*. This means that the Bowerses were free, as lower proprietors, to dam it, provided that the interests of good husbandry were served thereby, that it was necessary to do so, and that it was reasonable under all the circumstances presented. See *Slusarski v. County of Platte*, 226 Neb. 889, 416 N.W.2d 213 (1987). We find the Bowerses' actions were reasonable under the circumstances. They first attempted to control the water by asking the Kobzas to repair the piping system, and when the Kobzas refused, the Bowerses installed a second

culvert. When this method did not alleviate the problem, they built the berm, still providing for the flow of water through the berm into the drainageway. Accordingly, the Kobzas failed to establish that they are entitled to an injunction concerning the western drainageway.

### (b) Eastern Drainageway

[14] With respect to the water flowing in the eastern drainageway, the Kobzas claim that the Bowerses unlawfully altered the location of the drainageway and decreased its size. Woodward, the civil engineer, testified that the location of the eastern drainageway is different from its historic location, but he could not say why. He further explained that the eastern drainageway is more narrow and shallow than it was historically, and he believed that in the event of a major rainfall, it could cause problems. There was no evidence that there were any flooding problems resulting from the eastern ditch, however, and it is essential that one seeking to prohibit a diversion of the flow of surface water show some damage or injury resulting from it. See *Nu-Dwarf Farms, supra*. We therefore find that the district court did not err in concluding that the Kobzas failed to meet their burden of proof with respect to the eastern drainageway as well.

### (c) Amending Complaint

[15] After all the evidence had been submitted, but before closing arguments were due, the Kobzas moved for leave to file a fourth amended complaint. They wanted to amend their complaint to add a paragraph stating that injunctive relief was necessary because they have no adequate remedy at law. The district court denied the motion, determining that because the case had been submitted to the court, it was too late for any further amendments. Because we have concluded that the Kobzas failed to prove they were entitled to injunctive relief, we need not address this assignment of error. An appellate court is not obligated to engage in an analysis that is not necessary to adjudicate the case and controversy before it.

*Holdsworth v. Greenwood Farmers Co-op*, 286 Neb. 49, 835 N.W.2d 30 (2013).

## 2. CROSS-APPEAL

### (a) Damages for Loss of Trees

The Bowerses argue that the district court erred in failing to award damages for the loss of their trees. Melvin Bowers testified that a willow tree, a spruce tree, and a bush died after the southwest corner of their property was flooded by water piped from the Kobzas' dewatering well. A neighbor of the parties who previously owned a tree business testified as to the cost of replacing the trees. However, the district court determined that there was no expert opinion as to the "'cause of death'" of the trees and noted that the only evidence as to the reason for the trees' demise was given by Melvin Bowers himself. Because he is not qualified as an expert in order to give a credible opinion, the district court found that the Bowerses' failure to present evidence as to the reason for the loss of trees was fatal to their recovery. We agree that expert testimony was required to establish the cause of the trees' death.

In *Lesiak v. Central Valley Ag Co-op*, 283 Neb. 103, 808 N.W.2d 67 (2012), the Nebraska Supreme Court reversed the trial court's decision to direct a verdict in the defendant's favor on the basis that the plaintiff failed to prove causation and damages. The plaintiff sued the defendant for damage to corn crops and called an agronomist as an expert witness at trial. The agronomist explained that he was able to determine the cause of the damage from reviewing the crop residue and root systems and explained his opinion that an improperly high rate of application of herbicide was the cause of the damage. On appeal, the Supreme Court concluded that the record contained evidence explaining the biological mechanism by which the damage could be caused and that thus, there was sufficient evidence from which the jury could have found the defendant's actions caused the plaintiff's damage. *Id*.

In the present case, however, the Bowerses failed to present any scientific evidence establishing the cause of the damage to their trees. The only evidence regarding causation was Melvin Bowers' testimony that the trees "died from all the water." This was insufficient to establish the causal link between excessive water and the loss of the trees.

Because the Bowerses failed to designate an expert witness to opine as to causation, they failed to present sufficient evidence proving the cause of the loss of their trees. Therefore, the district court did not err in denying their request for damages.

### (b) Injunction

The Bowerses claim that the district court erred in failing to enjoin the Kobzas from pumping ground water onto the Bowerses' property. We disagree.

[16-19] An injunction is an extraordinary remedy and ordinarily should not be granted except in a clear case where there is actual and substantial injury. *Rath v. City of Sutton*, 267 Neb. 265, 673 N.W.2d 869 (2004). Stated otherwise, injunctive relief should not be granted unless the right is clear, the damage is irreparable, and the remedy at law is inadequate to prevent a failure of justice. *Id*. As an injunction is an extraordinary remedy, it is available in the absence of an adequate remedy at law and where there is a real and imminent danger of irreparable injury. *Id*. An injury is irreparable when it is of such a character or nature that the party injured cannot be adequately compensated therefor in damages, or when the damages which may result therefrom cannot be measured by any certain pecuniary standard. *Id*.

In the present case, the Bowerses argue that it is not the prospect of damage to their land that requires the injunction, but, rather, it is the recurring waste of ground water by the Kobzas in violation of the public policy of the State. See *Metropolitan Utilities Dist. v. Merritt Beach Co.*, 179 Neb. 783, 799, 140 N.W.2d 626, 636 (1966) (underground waters are part of waters referred to in Nebraska Constitution as

"natural want," and waste of such waters as natural resource is against public policy). The Bowerses have failed to prove that an injunction is appropriate, however, because there is no real and imminent danger of irreparable damage. The Kobzas have not pumped ground water via their dewatering well since 2010; thus, an injunction is not necessary to prohibit them from doing something they have not done for several years. Consequently, we find no error in the district court's denial of the Bowerses' request for injunctive relief.

### (c) Court Costs

[20] The Bowerses assert that the district court erred in failing to award court costs as part of its judgment in their favor. We agree that under Neb. Rev. Stat. § 25-1708 (Cum. Supp. 2014), a prevailing plaintiff in actions for the recovery of money only or for the recovery of specific real or personal property shall be allowed costs. Likewise, Neb. Rev. Stat. § 25-1710 (Reissue 2008) provides for the recovery of costs to a defendant upon a judgment in his favor for the actions listed in § 25-1708. However, the Bowerses did not prevail as plaintiffs in their counterclaim for money damages for the loss of their trees and the Kobzas' action was one for injunction, not for a monetary judgment or for the recovery of real or personal property. Therefore, they are not entitled to recover court costs, and the district court did not err in denying their request.

### VI. CONCLUSION

For the foregoing reasons, we affirm the decision of the district court.

AFFIRMED.